# ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY *v.* ROBINSON.

## ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 450.   Argued February 26, 1914.—Decided April 6, 1914.

Where the state court by its ruling denies the carrier the benefit of the Interstate Commerce Act, a compliance wherewith was set up in the pleadings and supported by testimony, this court has jurisdiction to review under § 237, Judicial Code.

The effect of the Carmack Amendment was to give to Federal jurisdiction control over interstate commerce and to make Federal legislation regulating liability for property transported by common carriers in interstate commerce exclusive.

The shipper, as well as the carrier, is bound to take not ce of the filed tariff rates, and so long as they remain operative they are, in the absence of attempts at rebating or false billing, conclusive as to the rights of the parties. *Great Northern Ry.* v. *O'Connor,* 232 U. S. 508.

An oral agreement cannot be given a prevailing effect which will be contrary to the filed schedules. To do so would open the door to special contracts and defeat the primary purpose of the Interstate Commerce Act to require equal treatment of all shippers and the charging to all of but one rate, and that the rate filed as required by the act.

36 Oklahoma, 435, reversed.

THE facts, which involve the construction of the Hepburn Act and of the Carmack Amendment, are stated in the opinion.

*Mr. S. T. Bledsoe,* with whom *Mr. J. R. Cottingham* and *Mr. George M. Green* were on the brief, for plaintiff in error:

A Federal question was raised by the answer and the amended answer.

The freight was paid on basis of a limited liability contract.

The classification and tariff were binding on shipper.

The shipper was charged with notice of provision of tariff.

There was error in the instructions given by the court.

In support of these contentions, see *Adams Express Co. v. Croninger,* 226 U. S. 491; *C., B. & Q. Ry. Co. v. Miller,* 226 U. S. 513; *Chicago & Alton Ry. Co. v. Kirby,* 225 U. S. 155; *C., St. P., M. & O. Ry. Co. v. Latta,* 226 U. S. 519; *Dower v. Richards,* 151 U. S. 658; *K. C. So. Ry. Co. v. Albers Comm. Co.,* 223 U. S. 575; *K. C. So. Ry. Co. v. Carl,* 227 U. S. 639; *M., K. & T. Ry. Co. v. Harriman,* 227 U. S. 657; *Mackey v. Dillon,* 4 How. 421–427; *Stanley v. Schwalby,* 162 U. S. 255; *T. & P. Ry. Co. v. Mugg,* 202 U. S. 242; *Wells, Fargo & Co. v. Neiman-Marcus,* 227 U. S. 469; *St. L. & S. F. Ry. Co. v. Ladd,* 33 Oklahoma, 160; *Commonwealth v. Clearfield Coal Co.,* 129 Pa. St. 461.

*Mr. John B. Daish,* with whom *Mr. H. H. Smith* and *Mr. J. W. Beller* were on the brief, for defendant in error:

The shipment moved upon an oral agreement, which was a breach of the railway company's obligation to carry safely, and within a reasonable time. The horses were not weighed and, according to the Supreme Court of Missouri, this is conclusive that the alleged written contract was not in good faith. See *Leas v. Quincy Ry. Co.,* 136 S. W. Rep. 963; *Burns v. C. R. I. & P. Ry. Co.,* 132 S. W. Rep. 1; *Grant v. C., R. I. & P. Ry. Co.,* 132 S. W. Rep. 311.

While this court has decided several times that the signing of the contract was conclusive on the shipper as to the terms contained, it also clearly says that if any deceit or fraud, of whatever kind and nature, is practiced on the shipper, these facts of fraud or deceit may be shown in the case, and the jury are the rightful judges of the probative value of the same, and the contract in that class of cases would not be binding.

The facts found by the Supreme Court of Oklahoma are conclusive on this court.

This court will not inquire into the facts, but depends upon the findings of the state court. *Hilton* v. *Dickman*, 6 Cranch, 165; *United States* v. *Burchard*, 125 U. S. 178. See rule 4 of this court, par. 2.

Where the jurisdiction of this court is doubtful, a writ of error will not be awarded. *N. Y. & N. E. Ry. Co.* v. *Bristol*, 151 U. S. 555; *So. Ry. Co.* v. *Carson*, 194 U. S. 136.

The Interstate Commerce Act does not contemplate either a written or an oral contract, and neither has been legislated about by Congress, and until Congress exercises authority over these contracts, they will be regulated by the law of the place where they are made. An oral contract is valid in Missouri, in reference to an interstate shipment, so long as its terms do not contravene the provisions of the act. *Railroad Co.* v. *Abilene Cotton Co.*, 204 U. S. 426; *Merchants Press Co.* v. *Insurance Co.*, 151 U. S. 368.

This court will not take jurisdiction of a case decided on a theory not necessary to determine a Federal question. *Case Mfg. Co.* v. *Soxman*, 138 U. S. 431; *Atlantic Coast Line* v. *Riverside Mill Co.*, 219 U. S. 186; *Hammond* v. *Whittredge*, 204 U. S. 547; *Forbes* v. *Virginia State Council*, 216 U. S. 399; *Rogers* v. *Jones*, 214 U. S. 204; *Leathe* v. *Thomas*, 207 U. S. 93; *California Powder Works* v. *Davis*, 151 U. S. 393; *Gaar, Scott & Co.* v. *Shannon*, 223 U. S. 468.

Questions of fact found by state courts are conclusive on the Supreme Court of the United States. *King* v. *West Virginia*, 216 U. S. 100; *Waters-Pierce Oil Co.* v. *Texas*, 212 U. S. 97; *Chrisman* v. *Miller*, 197 U. S. 319.

The cases cited by counsel for plaintiff in error are not applicable, because, in all of the cases cited, the question presented was that the shipment moved upon the written contract, but there was no *bona fide* valuation.

The implied agreement of the common carrier is to carry safely, and deliver at destination within a reasonable time. It is otherwise when the action is for a breach of a contract to carry within a particular time, etc. *Railway Co.* v. *Kirby*, 226 U. S. 155.

The submission, as a question of fact, as to whether the shipment moved by oral contract, or the written contract, was a question of practice in this jurisdiction, and is not reviewable by this court.

Matters of practice in inferior courts do not constitute subjects upon which error can be assigned in the appellate courts. *Parsons* v. *Bedford*, 3 Pet. 433; *Earnshaw* v. *United States*, 146 U. S. 60; *The Francis Wright*, 105 U. S. 381; *Mining Co.* v. *Boggs*, 3 Wall. 304.

If the case was decided upon some ground where it was not necessary to bring the Federal statute into controversy, then no Federal question is presented, and the Supreme Court of the United States has no jurisdiction. *Lawler* v. *Walker*, 14 How. 149. See, *The Victory*, 6 Wall. 382.

It must appear that the state court could not have reached its judgment without expressly deciding the Federal matter. *Bachtel* v. *Wilson*, 204 U. S. 36.

If the statute is only collaterally involved, this court has no jurisdiction. *Candee* v. *York*, 168 U. S. 642; *Williams* v. *Oliver*, 12 Wall. 111.

If the case is disposed of upon non-Federal grounds, the Supreme Court has no jurisdiction. *Harrison* v. *Morton*, 171 U. S. 38; *Klinger* v. *Missouri*, 13 Wall. 257; *Chicago Railway Co.* v. *Illinois*, 200 U. S. 561.


MR. JUSTICE DAY delivered the opinion of the court.

The defendant in error, plaintiff below and herein so designated, brought suit in the District Court of Lincoln County, Oklahoma, to recover for damages to a race horse, the property of the plaintiff, which was shipped with

other race horses from Kansas City, Missouri, to Lawrence, Kansas. Upon verdict in favor of the plaintiff, judgment was entered accordingly, which was affirmed by the Supreme Court of Oklahoma (36 Oklahoma, 435).

The plaintiff alleged that the contract of consignment was a verbal one, made by calling up the agent of the Railway Company at Kansas City by telephone on the day the shipment was made, advising him that the plaintiff had race horses which he desired to ship to Lawrence in time for the races next day; that he was informed by the agent that such shipment could be made and that if the horses could be loaded between four and six o'clock of that afternoon they would be carried by the fast freight known as the "Red Ball," making no stops for local freight and reaching Lawrence about twelve o'clock that night; that it was agreed between them that the shipment should be made by that train; that the plaintiff was instructed where to bring the horses and informed that a car would be placed to receive them; and that the horses were taken to the place designated by the agent, loaded into a car between five and six o'clock in the afternoon, the car being closed and labeled "Red Ball," meaning that it should go with the "Red Ball" train on that evening. The car was not taken out that night, and there was testimony tending to show that it was switched about in the yard and on the next morning was started with local freight to Lawrence, arriving there about two o'clock next day, too late for the races. And there was evidence that the horse of the plaintiff had been badly injured through the negligence of the defendant.

By an amended answer the Railway Company set up the fact that the shipment was in interstate commerce and the filing and approval by the Interstate Commerce Commission of certain tariff rates duly posted, as required by the act, wherein it was provided:

"(A) Rates named in section two apply on shipments

of ordinary live stock, where contracts are executed by shippers on blanks furnished by these companies, and are based on the declared valuation by the shipper at time contract is signed, not to exceed the following:

"Each horse or pony (gelding, mare, stallion), mule or jack, $100.00. Each ox, bull or steer, $50.00. Each cow, $30.00. Each calf, $10.00. Each hog, $10.00. Each sheep or goat, $3.00.

"(B) Where the declared value exceeds the above an addition of twenty-five per cent. will be added to the rate for each one hundred per cent. or fractional part thereof of additional declared valuation per head. Animals exceeding in value $800.00 per head will be taken only by special arrangement.

"(C) Table of rates named will be charged on shipments of live stock made with limitation of company's liability at common law, and under this status shippers will have the choice of executing or accepting contracts for shipments of live stock with or without limitation of liability and rates accordingly";

and alleged that the shipper obtained the benefit of the reduced rate applicable to the value fixed in the written contract governing the shipment of horses; that the shipment was made under the tariffs so filed with the Interstate Commerce Commission, and that the rates and liability of the Company were governed by the act of Congress. The plaintiff contended that the complete contract was made in the oral arrangement without reference to or mention of any particular rate or the value of the stock other than that it was a race horse. Taking the most favorable view of the testimony for the plaintiff, it tended to show that after the car had started from the place of loading an agent of the company presented to the plaintiff a printed contract made in conformity to the schedules filed with the Interstate Commerce Commission, but without calling his attention to its provisions, without

informing him of its contents and without procuring his assent to the terms therein stated, although he admitted executing the contract.

The trial court charged the jury over the exception of the Railway Company that if they found that at the time of the shipment the contract was entered into by the plaintiff and the defendant and that the plaintiff represented to the defendant that the horse did not exceed $100 in value and that the defendant relied upon the representation and gave a rate less than the regular one for that class of shipment and was misled by such misrepresentation and induced to fix a lower rate than the regular one, and if they found the defendant guilty of negligence, they were limited in their findings to the sum of $100; but that if they found that the representation was not made by the plaintiff but was arbitrarily inserted by defendant or printed in its contract when signed, then the plaintiff was not bound by the limitation and they should find his actual damages. The jury rendered a verdict in favor of the plaintiff for $1500.

Upon writ of error to the Supreme Court of Oklahoma that court affirmed the judgment rendered in the District Court and held:

"Where a shipment of live stock is made under a verbal contract, and where every move made, every step taken toward a shipment, up to and including a complete consignment and surrender of control by the shipper, the starting in transit of the shipment and the assumption of liability for negligence by the carrier, is all under and pursuant to such parol agreement, and after this a printed shipping contract is presented to the shipper to sign, he has the right to assume that it embodies the terms of the verbal agreement, and the carrier will not be permitted to escape liabilities accruing to the shipper under the verbal agreement by reason of certain provisions in the written contract at variance with the parol contract,

unless · the shipper's attention has been called to such provisions and fair opportunity given him to assent to same."

It is thus seen that the defendant specially set up a defense under the Interstate Commerce Act, a Federal statute, which, if denied to him, was an adverse ruling of Federal right which would warrant the bringing of the case to this court from the highest court of a State under former § 709 of the Revised Statutes of the United States, now § 237 of the Judicial Code. It is apparent from the foregoing statement that the Federal question now presented involves the ruling of the state court denying to the carrier the benefit of the Interstate Commerce Act, a compliance with which was set up in the amended answer and supported by testimony tending to show the truth of the allegations thereof.

That the effect of the Carmack Amendment to the Hepburn Act, § 20, act of June 29, 1906, c. 3591, 34 Stat. 584, 593, was to give to the Federal jurisdiction control over interstate commerce and to make supreme the Federal legislation regulating liability for property transported by common carriers in interstate commerce has been so recently and repeatedly decided in this court as to require now little more than a reference to some of the cases. *Kansas City Southern Ry. Co.* v. *Carl,* 227 U. S. 639; *Missouri, Kansas & Texas Ry. Co.* v. *Harriman,* 227 U. S. 657; *Chicago, Rock Island & Pacific Ry. Co.* v. *Cramer,* 232 U. S. 490; *Great Northern Ry. Co.* v. *O'Connor,* 232 U. S. 508. We regard these cases as settling the proposition, that the shipper as well as the carrier is bound to take notice of the filed tariff rates and that so long as they remain operative they are conclusive as to the rights · of the parties, in the absence of facts or circumstances showing an attempt at rebating or false billing. *Great Northern Ry. Co.* v. *O'Connor, supra.* To give to the oral agreement upon which the suit was brought, the prevailing

effect allowed in this case by the charge in the trial court, affirmed by the judgment of the Supreme Court of the State, would be to allow a special contract to have binding force and effect though made in violation of the filed schedules which were to be equally observed by the shipper and carrier. If oral agreements of this character can be sustained then the door is open to all manner of special contracts, departing from the schedules and rates filed with the Commission. *Kansas City Southern Ry. Co.* v. *Carl, supra,* p. 652. To maintain the supremacy of such oral agreements would defeat the primary purposes of the Interstate Commerce Act, so often affirmed in the decisions of this court, which are to require equal treatment of all shippers and the charging of but one rate to all, and that the one filed as required by the act.

The Supreme Court of the State in this case affirmed the instruction of the trial court upon which the case was given to the jury and held that the oral contract was binding unless it was affirmatively shown that the written agreement, based upon the filed schedules, was brought to the knowledge of the shipper and its terms assented to by him. This ruling ignored the terms of shipment set forth in the schedules and permitted recovery upon the contract made in violation thereof in a case where there was no proof that there was an attempt to violate the published rates by a fraudulent agreement showing rebating or false billing of the property, and no circumstances which would take the case out of the rulings heretofore made by this court as to the binding effect of such filed schedules and the duty of the shipper to take notice of the terms of such rates and the obligation to be bound thereby in the absence of the exceptional circumstances to which we have referred.

It follows that the ruling of the state court affirmed in the Supreme Court deprived the plaintiff in error of rights secured by the Federal statute, when properly

construed, which were set up and claimed in the state
court.

> *Judgment reversed and case remanded for further pro-
> ceedings not inconsistent with this opinion.*

MR. JUSTICE PITNEY dissents.