## J. T. RATHER & COMPANY *v.* NASHVILLE, C. & ST. L. RY. CO.

### (*Nashville.*   December Term, 1914.)

1. **CARRIERS.**   Rates.   Filing with interstate commerce commission.

   While there is no presumption that a freight rate is reasonably low because it has been published and filed with the interstate commerce commission, individual shippers cannot attack the reasonableness of such a rate.   (*Post, pp.* 293-302.)

   Acts cited and construed:   Acts 1906, ch. 3591, sec. 7.

   Cases cited and approved:   Adams Ex. Co. v. Croninger, 226 U. S., 502; Illinois Cent. R. Co. v. Interstate Commerce Commission, 206 U. S., 441; Railroad Co. v. Carl, 227 U. S., 639; M., K. & T. R. R. Co. v. Harriman Bros., 227 U. S., 668; C., R. I. & P. v. Cramer, 232 U. S., 490; Boston & Maine R. R. v. Hooker, 233 U. S., 97; A., T. & S. F. Ry. v. Robinson, 233 U. S., 173; Pierce Co. v. Wells Fargo & Co., 235 U. S., —; Railroad Co. v. Miller, 226 U. S., 513; Great Northern Ry. Co. v. O'Connor, 232 U. S., 508.

2. **CARRIERS.**   Carriage of live stock.   Limitation of liability.

   Where the bill of lading for an interstate shipment of live stock, which limited the carrier's liability and recited that the consideration for the limitation was the giving of a lesser rate than the one filed with the interstate commerce commission, was accepted, the shipper is bound by the limitation, and cannot attack it on the theory that the rate filed with the commission was not reasonably low.   (*Post, pp.* 293-302.)

---

FROM RUTHERFORD.

---

131Tenn19

Appeal from the Circuit Court of Rutherford County to the Court of Civil Appeals and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —JOHN E. RICHARDSON, Judge.

RIDLEY & RICHARDSON, for plaintiff.

Judge CLAUDE WALLER and T. B. LYTLE, for defendant.

MR. JUSTICE FANCHER delivered the opinion of the Court.

The case is before this court from the court of civil appeals on a writ of *certiorari* heretofore granted.

This action involves the liability of the railway company under a contract for an interstate shipment of hogs. The plaintiff shipped from Murfreesboro, Tenn., to Louisville, Ky., two carloads of hogs. In the contract of shipment was a provision limiting the liability of the railway company in case of loss to $5 per head. This contract is what is known locally at Murfreesboro, as the "Yellow Contract." There was on file with the interstate commerce commission, and posted at the stations of the railway company, as required by law the rates for interstate shipments, and which include the rates from Murfreesboro to Louisville on the transportation of live stock. One form of these contracts on file was optional with the plaintiff, by which he could have contracted so that the railway company would asume the full common-law liability in case of loss.

There were fifty-one hogs lost in the shipment, and the actual value of the hogs exceeded largely the $5 per head of contractual liability.

The verdict of the jury was for the full amount of actual value of the hogs, viz., $753.59, but upon a motion for a new trial by the railway company, to the effect that the evidence does not support the verdict of the jury, and that it was not responsive to the charge of the court, also that it was excessive, the trial judge held that all grounds of the motion should be overruled except the weight of the evidence as to the value of the hogs was against the verdict, that the verdict was not responsive to the charge, and that the fixing the value of the hogs by the jury was not correct.

The court thereupon directed a remittitur to the amount as fixed by the $5 per head contract, reducing it to $185.93, the amount after deducting a credit received for dead hogs. The plaintiff made the remittitur under protest and appealed as provided for in the Act of 1911, chapter 29. The holding of the circuit judge was affirmed by the court of civil appeals. The $5 per head was about one-fourth the value of the hogs.

The petition for *certiorari* and assignments of errors thereon raises the question as to the validity and reasonableness of this contract of shipment. The rate was $32 per carload under the Yellow Contract, whereas, if the contract providing for the common-law liability had been accepted, the rate would have been double that amount, or $64 per carload.

This Yellow Contract contained a receipt for the live stock, giving names of consignor, consignee, and destination, number of hogs and number of Nashville, Chattanooga & St. Louis car. Then followed a heading to the contract as follows:

"Tariff rate on this shipment from Murfreesboro to Louisville, Ky., is $64 per thirty-six ft. car." It thereupon recited that said railway and its connecting lines transport live stock only as per above tariff, but in consideration that the railway will transport said live stock at the rate of $32 per thirty-six foot car (after a number of stipulations), it provides:

"It is further agreed that should loss or damage occur for which the party of the first part may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed the following. . . ."

Thereupon is set out a table of values for various kinds of animals, in which hogs are included at a value of $5 each, and it is provided that it is agreed that the animals herein agreed to be transported are reasonably worth $5 each.

The agent of the plaintiff in making out the contract of shipment was sufficiently familiar with these rates that in the blank space for that purpose at the head of the contract, he wrote in the $64 which it was agreed would have been the rate if the other contract had been accepted. The plaintiff testified, denying knowledge of the alternative right to accept either contract, and stated that he knew of no other but the Yellow Con-

tract.    However that may have been, it seems that his agent who signed the contract did know of it, or else he would not have written into the blank space the rate of $64 per car.

On cross-examination, Mr. Rather admitted that his agent signed this particular contract in order to get the reduced rate.    He stated that this contract was the only one used by shippers, and that the $64 is neither fair nor reasonable, but so high as to be prohibitive. One witness says:

"It would be so high that a farmer could not ship his hogs and would have to kill them all here."

Another witness says that the buyer would have to buy hogs cheaper or quit shipping them, it would be a prohibitive rate.

All the proof goes to show that this rate is unreasonably out of proportion to the rate charged limiting the liability, and that it is so high that no shipments are made under it.    In fact the railway company makes no attempt to show that it is a reasonable rate.    The question is, Can the unreasonableness of the rate be made the subject of inquiry in this suit?

This question is the subject of federal legislation, under what is known as the "Carmack Amendment to the Hepburn Act," passed by the Congress of the United States in 1906 (Act June 29, 1906, ch. 3591, sec. 7, pars. 11, 12, 34 Stat. 593 [U. S. Comp. St. 1913, sec. 8592]).    This amendment, as construed by the supreme court of the United States, contains the following provisions:

"First: It affirmatively requires the initial carrier to issue 'a receipt or bill of lading therefor,' when it receives 'property for transportation from a point in one State to a point in another.'

"Second: Such initial carrier is made 'liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it.'

"Third: It is also made liable for any loss, damage, or injury to such property caused by 'any common carrier, railroad or transportation company to which such property may be delivered, or over whose line or lines such property may pass.'

"Fourth: It affirmatively declares that 'no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed.'" *Adams Express Co.* v. *Croninger,* 226 U. S., 502, 33 Sup. Ct., 148, 57 L. Ed., 319, 44 L. R. A. (N. S.), 257.

It is said by the defendant that the question of the reasonableness of the contracts offered to shippers of live stock is not open, for the reason that these rates have been filed with the interstate commerce commission; that, the federal government having taken over the entire regulation and control of interstate shipments, when a rate is fixed or approved by the interstate commerce commission, no question can be raised as to the reasonableness of that rate except before the commission itself.

It does not appear that these tariffs have been the subject of any inquiry or ratification by the interstate commerce commission, but they are on file with it.

It is declared by the interstate commerce commission, in a ruling on the subject, that there is no presumption of law that a freight rate upon a particular commodity is reasonably low because such rate has been duly published and filed by the carrier with the interstate commerce commission. Barnes on Interstate Transportation, p. 223; *Illinois Cent. R. Co.* v. *Interstate Commerce Commission,* 206 U. S., 441, 27 Sup. Ct., 700, 51 L. Ed., 1128. But evidently this ruling is not made to allow each independent shipper to bring the rate into question in each case coming up, for that would be to destroy the main feature of the law, the prevention of discrimination. The ruling is made only so the commission itself may not be bound.

The right to limit liability on interstate shipments since the passage of Hepburn Act in 1906, when freely and fairly entered into, has been declared by the supreme court of the United States in a number of cases. *Adams Express Co.* v. *Croninger,* 226 U. S., 491, 33 Sup. Ct., 148, 57 L. Ed., 314, 44 L. R. A. (N. S.), 257; *Kansas City Southern R. R. Co.* v. *Carl,* 227 U. S., 639, 33 Sup. Ct., 391; 57 L. Ed., 683; *M., K. & T. R. R. Co.* v. *Harriman Bros.,* 227 U. S., 668, 33 Sup. Ct., 397, 57 L. Ed., 696; *Chicago, R. I. & P.* v. *Cramer,* 232 U. S., 490, 34 Sup. Ct., 383, 58 L. Ed., 697; *Boston & Maine R. R.* v. *Hooker,* 233 U. S., 97, 34 Sup. Ct., 526, 58 L. Ed., 686; *A., T. & S. F. Ry.* v. *Robinson,* 233 U. S.,

173, 34 Sup. Ct., 556, 58 L. Ed., 901; *Pierce Co.* v. *Wells Fargo & Co.*, 235 U. S., —, 35 Sup. Ct., 351, 59 L. Ed., — (February 23, 1915).

Construing the federal statute on the subject, it was held in these cases that a declared value by the shipper for the purpose of determining the rate applicable when the rates are based upon valuation is not an exemption from any part of the statutory or common-law liability; that prior to the Carmack amendment, the rule of carrier's liability for an interstate shipment of property as enforced in both federal and State courts was either that of the common law as declared by and enforced in the federal courts, or that determined by the supposed public. policy of a particular State; that neither uniformity of obligation nor of liability was possible until congress should deal with the subject; that this legislation supersedes all the regulations and policies of a particular State upon the same subject, and that every detail of the subject is covered so completely that there can be no rational doubt but that congress intended to take possession of the subject and supersede all State regulation with reference to it; that when congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the State ceased to exist. It was held that it is an established rule of the common law, as declared by the supreme court of the United States in many cases, that a carrier may, by fair, open, just, and reasonable agreement, limit the amount recoverable by a shipper, in case of loss or damage, to an agreed value

Rather & Co. v. Railroad.

made for the purpose of obtaining the lower of two or more rates or charges proportioned to the amount, and the court reached the conclusion that the provision of the act of congress in question, forbidding exemption from liability imposed by the act, was not violated by a contract, limiting liability when freely and fairly entered into. *Adams Express Co.* v. *Croninger,* supra.

In the *Croninger Case,* the express rate on an interstate shipment between the points of shipment was twenty-five cents for a package where the agreed value was said not to exceed $50, and for the same package, if its value had been declared at $125, the rate filed and published would have been fifty-five cents. The shipment was a diamond ring worth much more than the agreed valuation.

In the case of *Kansas City, etc.,* v. *Carl,* the higher rate under the common-law liability was twenty per cent. higher on a shipment of household goods than it was under the contract of shipment in question, where the value was stipulated to be $5 per hundredweight.

This question also arose in the case of *Chicago, B. & Q. R. R. Co.* v. *Miller,* 226 U. S., 513, 33 Sup. Ct., 155, 57 L. Ed., 323, where a bill of lading signed by the shipper's agent placed a value of $100 on a stallion claimed afterwards to be worth $2,000. It was held that the shipper was estopped to claim a higher value than that agreed upon because upon that representation he had secured a lower rate.

The last opinion by the supreme court of the United States (Mr. Justice Day) was in a suit to recover the value of a car of automobiles valued at about $15,000, when the contract was on an agreed valuation of $50, and the contract was upheld as reasonable and valid. It was said:

"The facts detailed show that there was nothing unfair in the contract. It was made between competent parties, dealing at arm's length; and, for the purpose, so far as the shipper was concerned, of securing the lower rate, it deliberately took upon itself the risk of lessened recovery in case of loss for the sake of the lower rate. . . . If the rates were unreasonable it is for the commission to correct them upon proper proceedings. If this were not so, the interstate commerce act would fail to make effectual one of its prime objects, the prevention of discrimination among shippers." *Pierce Co.* v. *Wells Fargo & Co.*, supra.

The federal authorities above cited permit one inquiry, viz.: Was the contract fairly entered into between the parties? The rate cannot be questioned except before the commission, and, when fairly entered into, the amount of the agreed valuation cannot be afterward disputed. In the case of *Pierce Co.* v. *Wells Fargo Co.*, the actual value of the automobiles was $15,000, while the agreed valuation was only $50, but the contract was upheld notwithstanding this disparity. The agreement that $15,000 worth of automobiles are only worth $50 may seem absurd, but if the representation was made by the shipper in order to get the lower

of two rates open to him, it is held that he is bound by the agreement. *Great Northern Ry. Co.* v. *O'Connor,* 232 U. S., 508, 34 Sup. Ct., 380, 58 L. Ed., 703; *Boston & Maine R. R.* v. *Hooker,* 233 U. S., 97, 34 Sup. Ct., 526, 58 L. Ed., 868; *Kansas Sou. Ry. Co.* v. *Carl,* 227 U. S., 639, 33 Sup. Ct., 391, 57 L. Ed., 683. The only thing left open is as to whether the contract (however hard it may seem) was freely and fairly entered into.

In the *O'Connor Case,* 232 U. S., 508, 34 Sup. Ct., 380, 58 L. Ed., 703, and the *Robinson Case,* 233 U. S., 173, 34 Sup. Ct., 556, 58 L. Ed., 901, it was said that the conclusiveness of the filed rates has no application to attempted fraudulent acts or false billing. But there is no hint at fraud or false billing in the present case. The rates were open to inspection at the station of the defendant at Murfreesboro, and if the terms of the contract were not known, they were at least available to plaintiff. He must take notice of the rates applicable when they are filed with the interstate commerce commission, as required by law, and actual want of knowledge is no excuse. The shipper's knowledge of the lawful rate is conclusively presumed. The rate when made out and filed is notice, and its effect is not lost, although it is not actually posted at the station. *Kansas City Sou. Ry.* v. *Carl,* 227 U. S., 639, 33 Sup. Ct., 391, 57 L. Ed., 683.

The fact that the agreed value was not the result of special negotiation between the parties, but was a fixed and arbitrary value put into the contract by the

carrier, and appearing in a list applying to any and all animals of a class, regardless of actual value, does not seem to render it any the less the contract of the parties, according to these federal cases.

In the *Carl Case,* the *Harriman Case,* and in *Pierce Co. v. Wells Fargo & Co.,* this is decided against the contention of plaintiff. In the *Carl* and *Harriman Cases* the agreed valuation was set out in the printed contract in a table applying an arbitrary valuation as to any horse, or any cow, or other animal appearing therein.

In the case of *Great Northern R. Co. v. O'Connor,* 232 U. S., 511, 34 Sup. Ct., 380, 58 L. Ed., 703, the question was made that the contract was on a printed form, and there was no *bona fide* effort to agree on a valuation, and therefore the plaintiff was entitled to recover the full valuation. It was held that it was unnecessary for the railway to offer evidence to sustain the reasonableness of rates, classification, or other terms in the tariff filed with the commission; that the shipper had the right, by appropriate proceedings, to attack the rate or the classification, and if either or both were held to be unreasonable, could secure appropriate relief, either by reparation order, or by suit in court after such finding of unreasonableness; that so long as the tariff rate based on value remained operative, it was binding upon the shipper and carrier alike, and was to be enforced by the courts in fixing the rights and liabilities of the parties; that the tariffs are filed with the commission and are open to inspec-

Rather & Co. v. Railroad.

tion at every station; that in view of the multitude of transactions, it is not necessary that there shall be an inquiry as to each article, or a distinct agreement as to the value of each shipment. If no value is stated, the tariff rate applicable to such a state of facts applies. If, on the other hand, there are alternative rates based on value, and the shipper names a value to secure the lower rate, the carrier, in the absence of something to show rebating or false billing, is entitled to collect the rate which applies to goods of that class, and if sued for their loss, it is liable only for the loss of what the shipper had declared them to be in class and value, and the court said:

"Nor was the result changed because of the use of printed forms. This appears from the ruling of *Hart* v. *Pa. R. Co.,* 112 U. S., 331 (5 Sup. Ct., 151, 28 L. Ed., 717), where it was claimed that the shipper had not been asked to state the value, but had merely signed a printed contract naming a value. The court said: 'The valuation named was the "agreed valuation," the one on which the minds of the parties met, however it came to be fixed, and the rate of freight was based on that valuation, and was fixed on condition that such was the valuation, and that the liability should go to that extent and no further.' " *Great Northern R. Co.* v. *O'Connor,* 232 U. S., 516, 34 Sup. Ct., 383, 58 L. Ed., 703.

Undoubtedly the federal authorities are controlling upon this subject. It is the duty of the State courts to adhere to the rules of construction and holdings of

the federal courts on this subject. The cases above cited give conclusive authority to uphold the contract here in question. The action of the trial court and of the court of civil appeals in limiting the liability of the railway to the agreed valuation of $5 per head for each hog shipped as contained in the printed contract in question is therefore approved and affirmed.