SAN ANTONIO & A. P. RY. CO. v. MILLER.
(No. 6247.)

(Court of Civil Appeals of Texas. San Antonio. June 14, 1919.)

CARRIERS ⚍219(7)—CARRIAGE OF LIVE STOCK —NOTICE OF LOSS—CONTRACT.

A shipper of live stock is bound by provision of the contract, signed by him with the second carrier, requiring notice of injury to stock, if he had opportunity to read the contract before signing it, though he testified he had a previous oral contract with the initial carrier for the shipment to final destination.

Appeal from San Patricio County Court; A. L. Neal, Special Judge.

Action by W. C. Miller against the San Antonio & Aransas Pass Railway Company.

Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered for defendant.

Kleberg, Stayton & North, of Corpus Christi, for appellant.

MOURSUND, J. Appellee sued to recover $210 damages alleged to have been sustained by him by reason of the rough handling of two carloads of cattle transported by appellant from San Antonio to Center Point. In his amended original petition he alleged that—

"The defendant contracted with plaintiff to transport certain cattle belonging to plaintiff from San Antonio, Texas, to Center Point, Texas, for a reward which was then and there duly paid defendant by plaintiff, defendant having received said cattle from the San Antonio, Uvalde & Gulf Railway Company, at San Antonio, Texas, which latter named company had transported the same from Odem, Texas, to San Antonio, Texas, for delivery to defendant, to be transported to Center Point as aforesaid, said cattle constituting two carloads."

After the appellant had answered, pleading a written contract with appellee, containing certain provisions relating to notice, and alleging noncompliance therewith, the appellee, by supplemental petition, denied that he entered into a written contract based upon a valuable consideration, and alleged that his first and original contract with defendant in regard to the shipment of said cattle was a verbal one had with the station agent of the San Antonio, Uvalde & Gulf Railway Company at Odem, Texas, to transport said cattle to Center Point. He then alleged that, acting under such verbal agreement, said last-mentioned railway company delivered to him two empty cars in which to transport the cattle; that after the cattle were loaded and ready to depart the agent informed him that, in order for him to secure transportation with said cattle, it would be necessary for him to sign a written contract, and that the agent then prepared said contract, and he signed it, but did not read it, and did not know that it contained a provision with reference to giving defendant notice of any injury to the cattle, or limiting the time in which such notice should be presented; that he signed the written contract under the belief that it was merely for the purpose of securing his personal transportation.

The appellant, by supplemental answer, denied such allegations. The trial resulted in a judgment for $185, with interest thereon at 6 per cent. from June 1, 1916.

The written contract for the transportation of the cattle from San Antonio to Center Point, signed by appellee, contained the following provision:

⚍For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"The shipper further expressly agrees, as a condition precedent to his right to sue, or to recover for any damage of whatever character, or for any loss of, or injury to, his stock during transportation thereof, or previous to the loading thereof for shipment, or for any damage in any way arising out of, or connected with, either this shipment or this contract, that he will give definite written notice of his claim to the nearest or any other convenient local depot or general agent of the carrier sought to be held liable within six months after the date that his loss or damage occurs, which notice shall state the number of animals killed or injured, the character of injuries, and the amount of damage claimed, and that should he fail, from any cause, to give the carrier the notice within six months from date of his loss or damage, his failure to do so shall be a complete bar to any recovery on any and all claims, and the filing of suit for such loss or damage shall not be a compliance with this requirement, its purpose being to give the carrier, or carriers, an opportunity to investigate and settle before filing suit, and such notice cannot be waived. * * *"

The appellee failed to give notice of any kind until his attorney, more than nine months after the cattle arrived at Center Point, wrote appellant that he held for collection a claim for damages arising out of such transportation.

Want of notice was properly pleaded by appellant, and there was no plea on the part of appellee attacking the provision of the contract as unreasonable. The only effort made to avoid the effect of the provision is to assert a verbal contract. Appellee does not claim, however, that he made any verbal contract at San Antonio. On the contrary, he admits having made the written contract, and testified that he understood that he had to sign a contract. He does not claim that he did not have full opportunity to read such contract, nor does he offer any excuse for signing and accepting the same. He had signed a contract at Odem with the intitial carrier, which bound such carrier to transport the cattle to San Antonio only. That contract contained a provision requiring notice such as was contained in appellant's contract, except that the time specified was 120 days. He was asked if this was the contract he had at the very beginning, to which he replied: "We had a verbal contract at first." He then explained as follows:

"Well, I went to see the agent at Odem, who represents the San Antonio, Uvalde & Gulf people, to see what the rate was, and see if I could get a through shipment from Odem to Center Point. I contracted for two cars, and loaded the cattle. Then I asked him about transportation back, and he said I would have to sign a contract, and he went in and got them, and I remember that I signed a transfer in order to get back. There was no new contract made; only the one made with the San Antonio, Uvalde & Gulf people. The agent said he would wire San Antonio that we were coming, and if they were making a train they could wait for us, if they would. Yes, sir; I signed a transfer that entitled us to a pass back. No, sir; I did not read the contract I signed at Odem."

Appellee did not claim that he was not given sufficient time to read such contract, nor that he was misled concerning its purpose or contents. It may well be doubted whether his testimony is sufficient to show that the written contract was not binding on him; but, if so, there can be no doubt that he abandoned all former contracts and voluntarily entered into a new contract with the appellant at San Antonio, and is bound by the provisions thereof. He had the first contract in his possession all the way to San Antonio, and when informed at San Antonio that he would have to make another contract, if he wished to rely upon a contract already made, he should have declined to enter into the new contract. Instead, however, he executed the new contract, and did not even testify that he was ignorant of the contents, or compelled to accept it without opportunity for acquainting himself with its provisions. In fact, while his amended petition is not specific in its allegations, it is so worded as to convey the impression that he sues on a contract made directly with appellant at San Antonio.

We conclude that appellee is bound by the provisions of the written contract made at San Antonio, and, having failed to give the notice required thereby, is not entitled to recover.

The judgment is reversed, and judgment rendered that appellee take nothing by his suit.