**(90 South. 566)**

**No. 23027.**

**F. J. LEWIS MFG. CO. v. AMERICAN CREOSOTE WORKS, Inc.**

(April 4, 1921. On Rehearing, Jan. 2, 1922. Second Rehearing Denied Jan. 30, 1922.)

*(Syllabus by Editorial Staff.)*

On Rehearing.

1. **Limitation of actions** ⬤➡163(2)—**Prescription; plea properly overruled where evidence showed payments on account within one year.**

Pleas setting up the prescription of one and three years were properly overruled, where the

evidence showed that payments were made on the account sued on within one year of the time of the filing of the suit.

**2. Sales** ⊚⟶**79—Defendant confirming purchase by letter showing oil was in S. not entitled to claim benefit of freight rate from C.**

Where defendant confirmed a purchase of oil from plaintiff by a letter, referring to the oil as "now in your storage tank at Southport," and to be shipped direct to Louisville, Miss., it was in no position to claim that delivery was to be made at Chalmette, La., and that it was entitled to the benefit of the freight rate paid on former shipments from Chalmette, which was much less than the rate charged by the carrier by which the shipment was made from Southport, especially where there was nothing to show what the rate was from Chalmette at the date of the shipment, or that the rate from Southport was any different from that from Chalmette.

Appeal from Twenty-Eighth Judicial District Court, Parish of Jefferson; John E. Fleury, Judge.

Action by the F. J. Lewis Manufacturing Company against the American Creosote Works, Inc. Judgment for plaintiff, and defendant appeals. Amended and affirmed on rehearing.

Alfred E. Billings and Grant & Grant, all of New Orleans, for appellant.

Charles J. Larkin, Jr., and Dart, Kernan & Dart, all of New Orleans, for appellee.

SOMMERVILLE, J. Plaintiff sues for a balance of $3,399.23 on an open account, resulting from an oral contract in excess of $16,000, for 10 cars of creosote oil, to be forwarded to Louisville, Miss., in the year 1913.

There is no dispute over the amount of the balance due, but defendant answered and reconvened, claiming that plaintiff had damaged defendant in the amount of $3,361.68, caused by shipping the 10 carloads of creosote over the Illinois Central Railroad at a cost of 50 cents per hundred pounds, when by proper attention and care the oil might have been shipped over the New Orleans & Northeastern Railroad at a cost of 8 cents per hundred pounds. It alleged that it paid these excessive railroad freight charges to the Illinois Central Railroad, and that plaintiff was responsible to it for the amount in excess of what it would have paid for the freight had it been sent over the New Orleans & Northeastern Railroad. And it asks for judgment accordingly.

Defendant further pleaded prescription of one and three years. But the evidence shows that payments were made on the account to within one year of the time of filing the suit; and the pleas of prescription were properly overruled.

There was judgment in favor of plaintiff for the amount claimed and against defendant, rejecting its reconventional demand.

It would appear from the evidence that both plaintiff and defendant have offices, or representatives, in New Orleans; while plaintiff has a plant at Southport, and defendant's plant is at Louisville, Miss. The parties had been doing business together for some time, while plaintiff had a tank at Chalmette, just below New Orleans in St. Bernard parish, and that the creosote had been sent over the New Orleans & Northeastern Railroad to Louisville, Miss., at a rate of 8 cents per hundred pounds from Chalmette. But it abandoned its tank at Chalmette in 1913, and established a plant in Southport, which also adjoins New Orleans, in the parish of Jefferson; these three points are, according to the witnesses, in the "New Orleans district." And there is some confusion in the evidence as to where the creosote oil was to be shipped from. It was the custom of the trade for the seller to do the shipping; and the shipping was attended to in this instance by the plaintiff, the selling company.

In its petition, plaintiff says that the creosote was to be delivered f. o. b. Southport, while defendant says that it was to have been delivered f. o. b. Chalmette; and the

same confusion appears to exist through the correspondence between the parties and the evidence introduced on the trial. We think it immaterial to come to a positive conclusion on this point for the reason that the parties were in New Orleans, and that New Orleans was the shipping point contemplated by them. The witnesses for the plaintiff testified that Southport was sometimes considered a local station on the Illinois Central Railroad, and at other times as a switch point. The first letter from plaintiff to defendant would indicate that the creosote oil was to have been delivered in tank cars in "our yard," which would have meant Southport, while in another letter from plaintiff, it referred to the eight cent rate in effect from New Orleans to Louisville.

It was clearly the duty of the plaintiff to have investigated and to have ascertained the freight rates between New Orleans or Southport and Louisville before it shipped the oil by any road. The agent admitted that he knew the freight rate from New Orleans or Chalmette to Louisville; and, to protect the plaintiff in this suit, he testified that he went to the commercial office of the Illinois Central Railroad and asked if the freight rates were the same between the two points. He is not clear in his statements as to what the question propounded was. He testified on this point:

"I went to the Illinois Central Railroad commercial office at St. Charles and Common streets, and saw the rate clerk, and asked whether the rate via their line and the New Orleans, Mobile & Chicago would be the same as via the New Orleans & Northeastern and New Orleans, Mobile & Chicago, and he said at that time that it would have the same rate. However, he did not look up any record."

We do not think that this was a sufficient investigation on plaintiff's part. It was not what a prudent man in making a large shipment would have done. The shipper knew that the freight tariff was published and posted, and it was his duty to have looked at the published rates. In not doing so he was neglectful and at fault, and plaintiff is responsible for the damage wrought to defendant through such failure to perform the required duty. Section 6, Interstate Commerce Act (Fed. Stat. Annot. [2d. Ed.] vol. 4, p. 406, U. S. Comp. St. § 8569); Great Northern Ry. Co. v. O'Connor, 232 U. S. 508, 34 Sup. Ct. 380, 58 L. Ed. 703; A. T. & S. F. Ry. Co. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901.

We do not think that there was any fraud practiced or harm intended by the failure of plaintiff's agent to properly act in the premises, but it was through his fault that the damage was suffered by defendant.

It is argued that defendant has failed to make out its reconventional demand because it failed to prove the tariff rates between Southport, La., and Louisville, Miss. But, as before stated, Southport, New Orleans, and Chalmette were considered indiscriminately by the parties and the witnesses. The manager of the plaintiff company testified that the shipments from Chalmette were made from the "New Orleans district." Again, he said:

"I think the shipments heretofore had been at the plant at New Orleans or Chalmette wherever it was."

It is very clear, as stated before, that New Orleans was considered as the shipping point for all of the oil, and the bills of lading in this case are all dated New Orleans, and not Southport. It was really the rate between New Orleans and Louisville for the two competing roads that was of interest to the parties; and plaintiff could not select the road which made the greater freight charge at the expense of the defendant, whom it was pretending to serve. Plaintiff must bear the loss for this failure and neglect on the part of its manager.

Plaintiff has filed in this court a plea of prescription to the demand contained in the reconventional demand, claiming that the

"demand for damages alleged to have been caused by the negligence of the agent of the F. J. Lewis Mfg. Co. is prescribed by the lapse of more than three years from the time the damage was suffered."

We do not think that the allegation to the effect that more than three years since the time of the damage is equivalent to a plea of prescription of three years. The court cannot supply the plea. Or, if it is so considered, plaintiff has not furnished us with any authority to sustain such a plea. The reconventional demand claims damages for a quasi offense or act of negligence and imprudence on the part of plaintiff, and to which the plea of prescription of one year might be applicable.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by ordering that there be judgment in favor of plaintiff and against defendant in the sum of $3,399.23, with interest from judicial demand, with costs of suit, and that there be judgment in favor of defendant and against plaintiff for $3,361.68, with interest from August 13, 1913, and for costs.

O'NIELL, J., dissents, being of the opinion the judgment should be affirmed.

DAWKINS, J., takes no part.

On Rehearing.

LAND, J. The judgment in the lower court was in favor of plaintiff and against the defendant for the sum of $3,399.23, with legal interest from date of judicial demand until paid and all costs, and rejected defendant's reconventional demand.

Our former decree amended the judgment appealed from by ordering that there be judgment in favor of the plaintiff and against the defendant in the sum of $3,399.23, with interest from judicial demand, with costs of suit, and that there be judgment in favor of the defendant and against the plaintiff for $3,361.68, with interest from August 13, 1913, and for costs.

A rehearing was granted in this case on the application of the plaintiff.

The plaintiff, an Illinois company, doing business in the state of Louisiana, has instituted this suit against the defendant, a Louisiana corporation, with its legal domicile at Southport, Jefferson parish, to recover a balance of $3,399.23, alleged to be due on a sale by plaintiff to defendant of 10 carloads of creosote oil.

Plaintiff alleges that this oil was to be shipped by it to defendant at Louisville, Miss., and that said oil was sold and shipped f. o. b. Southport, La., and that at the request of defendant the agent of plaintiff company made out bills of lading for the shipment of said oil, and that the same was forwarded to Louisville, Miss., where they were received and the freight charges were paid by the defendant.

Defendant denies that this oil was purchased f. o. b. Southport, La., as alleged, and says that the purchase and delivery was f. o. b. Chalmette, La.

Defendant admits that 10 cars of creosote oil were forwarded to Louisville, Miss., and there received, but alleges that the freight charges were paid by defendant under protest. Defendant also denies that the bills of lading were made out by the agent of plaintiff at the request of defendant, and says that said bills of lading were from New Orleans, La., and not from Southport, as alleged by plaintiff.

Defendant pleads the prescription of one and three years against plaintiff's demands.

Defendant represents that it has had numerous and frequent dealings with plaintiff during several years prior to the instant transaction, and that during all of these dealings, creosote oil was purchased f. o. b. Chalmette, La., or New Orleans, La., and invariably shipped over the New Orleans & Northeastern Railroad to defendant's plant at Louisville, Miss., at a freight rate of 8

cents per hundred pounds; that the instant purchase was made f. o. b. Chalmette, La., a point convenient for direct shipment via the New Orleans & Northeastern Railroad according to custom; and that plaintiff at that time was erecting a plant at Southport, La., on ground owned by the Illinois Central Railroad Company, adjacent to said line, and was under obligation to make all shipments possible over said line; and that, for said reason, plaintiff desired to ship the creosote oil over said Illinois Central Railroad and requested of and obtained from defendant permission so to ship same on the representation and assurance to defendant as a condition precedent thereof that the freight would be the same to defendant's plant at Louisville, Miss., as via the New Orleans & Northeastern Railroad, to wit, 8 cents per hundred pounds.

Defendant represents that said method of shipment was consented to and permitted by it solely on the agreement by plaintiff that the freight rate would be 8 cents per hundred pounds; that said creosote oil arrived at Louisville, Miss., from August 11 to 13, both inclusive, 1913, and that defendant was presented with a bill for freight on same amounting to $4,002, and that defendant was compelled to pay, and did pay, same under protest in order to obtain possession of its creosote oil; that said freight bill was based on a rate of 50 cents per hundred pounds on 92,000 gallons of creosote oil; that the bill on the basis of 8 cents per hundred pounds, as represented by plaintiff, or if said shipment had been made via the New Orleans & Northeastern Railroad according to custom, would have been $640.32, making a difference of $3,361.68, loss incurred by defendant by breach of plaintiff's agreement; that said rate of 50 cents per hundred pounds was 42 cents in excess of the regular tariff rate via the New Orleans & Northeastern Railroad; that defendant would not have acceded to the request of plaintiff to divert to the Illinois Central Railroad if plaintiff had not made the representation to it that the rate would be the same over either railroad, and defendant has thereby suffered a loss by plaintiff's actions and breach of agreement to the extent of $3,361.68, for which sum defendant prays for judgment against plaintiff in reconvention.

[1] The prescription of one and three years pleaded by defendant were properly overruled by the lower judge, as the evidence shows that payments were made on the account within one year of the time of filing this suit.

Plaintiff has filed in this court a plea of prescription of one year against the reconventional demand of the defendant. There is no necessity of passing on this plea.

[2] We find in the record a letter of date July 19, 1913, written by defendant to plaintiff, confirming purchase made through Mr. Lynch, plaintiff's representative, of remainder of creosote oil, "now in your storage tank at Southport of approximately 250,000 gallons, price $0.0655 per gallon at 100' F. delivered into our storage tanks, or into tank cars delivered our yard."

In this letter it is stated:

"We [defendant] had an understanding with Mr. Lynch that ten cars of this oil were to be shipped direct to Louisville, Miss., the remainder to be delivered to us at New Orleans."

This letter shows clearly that the oil purchased by defendant was in a storage tank at Southport, parish of Jefferson, and was to be shipped from that point direct to Louisville, Miss., yet defendant, in the face of this letter, denies in its answer that this oil was purchased f. o. b. Southport, La., and declares that the purchase and delivery was f. o. b. Chalmette, La.

That the bills of lading dated New Orleans, La., August 4, 5, 6, 1913, do not represent oil shipped from Chalmette, in the parish of St. Bernard, is established by the testimony of Lynch, Southern manager for the

plaintiff. He states that in July, 1913, plaintiff company had no oil at Chalmette, and that they ceased doing business there in the early part of 1913. Defendant having confirmed sale of oil f. o. b. Southport, to be shipped direct to Louisville, Miss., is not in a position to claim a freight rate of 8 cents per hundred pounds on this oil, because the rate from Chalmette to Louisville, Miss., used to be 8 cents per hundred pounds, in former dealings between plaintiff and defendant.

There is nothing in the record to show what the rate was from Chalmette to Louisville, Miss., at the dates of these shipments of oil in August, 1913, and the record is barren of any evidence to prove that the rate from Southport to Louisville, Miss., via the Illinois Central Railroad was any different from that from Chalmette to the same destination via New Orleans & Northeastern Railroad, when these shipments were made, and for this reason defendant's reconventional demand should be rejected.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by ordering that there be judgment in favor of plaintiff and against defendant in the sum of $3,399.23, with interest from judicial demand, and judgment as amended be affirmed, and there be judgment rejecting defendant's reconventional demand.