**FORT WORTH & R. G. RY. CO. v. BURNS et al. (No. 6424.)**

(Court of Civil Appeals of Texas. Austin. April 19, 1922. Rehearing Denied May 24, 1922.)

1. **Carriers &#9096;32(1)—Contracts causing unlawful preference and discrimination void.**

Under the act to regulate commerce and the amendatory acts of Congress (U. S. Comp. St. § 8563 et seq.), contracts causing unlawful preferences and discrimination are void.

2. **Commerce &#9096;8(12)—State rules and regulations relating to interstate commerce superseded by acts of Congress.**

State rules and regulations governing interstate shipments have been superseded by the acts of Congress on such subject.

3. **Carriers &#9096;207(1)—Previous oral contract relating to interstate shipment superseded by written contract.**

Ordinarily, any previous oral contract relating to an interstate shipment is superseded by the written contract.

4. **Evidence &#9096;69—Carrier presumed to be conducting business lawfully.**

A carrier is presumed to be conducting its business lawfully.

5. **Carriers &#9096;218(2)—Provision of bill of lading releasing carrier from damages from breach of prior agreements as to furnishing cars held void.**

Provisions of bill of lading, releasing carrier from all damages arising from breach of any prior agreement with respect to furnishing cars, held void under act of Congress regulating commerce as amended by U. S. Comp. St. § 8563(2), and the Cummins Amendment (U. S. Comp. St. § 8604a).

6. **Carriers &#9096;47(1)—Local agent's authority to contract to furnish cars on particular date may be implied from the nature of the business intrusted to agent.**

The authority of a local agent of a railroad to contract for furnishing cars at a particular date may be implied from the nature of the business intrusted to the agent.

7. **Evidence &#9096;474(19) — Qualified witness could testify as to difference in value of cattle and what value would have been if they had arrived 24 hours earlier.**

In action for delay in furnishing cars for shipment of cattle, the plaintiff could testify as to the difference in the intrinsic value of cattle at the time they arrived, and what the value would have been if they had arrived 24 hours earlier.

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Suit by S. P. Burns and others against the Forth Worth & Rio Grande Railway Company, for which William G. McAdoo, Director General of Railroads, and John Barton Payne, Agent, were in turn substituted.

---

&#9096;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Judgment for plaintiffs, and the Railroad appeals. Affirmed.

Goree, Odell & Allen, of Fort Worth, and McCartney, Foster & McGee, of Brownwood, for appellant.

Scott & Davis, of Brownwood, for appellees.

BRADY, J. This suit was originally brought against the Fort Worth & Rio Grande Railway Company, but Wm. G. McAdoo, Director General of Railroads, being in control of the railway at the time the cause of action accrued, was substituted as defendant below, and in turn John Barton Payne, Agent, was substituted.

It was alleged by the plaintiffs that, on April 1, 1918, they made a verbal contract with the defendant McAdoo and his agent, for the furnishing on April 8th of 26 cars, to move 867 head of cattle, which they tendered for shipment to defendant at Brownwood, Tex., on the last-named date, to be shipped to the state of Oklahoma, and that in reliance upon the verbal contract they brought their cattle to Brownwood on the 8th of April for shipment; that through negligence of defendant and his agents the cars were not furnished until the 9th day of April, 1918, and in consequence of the delay at Brownwood they sustained damages in the sum of $1,450.

The defenses were a general denial and the special pleas that the shipments moved in interstate commerce, under written contracts contained in bills of lading issued; that the contracts specifically stated that no station agent had authority to make any agreement to furnish cars on any special date; that the contracts were made in behalf of all connecting carriers, and were based upon freight rate lower than the regular rate; and, among other things, provided that the shipper released the carriers from all damages arising from breach of any prior agreement with respect to furnishing cars, and that all prior understandings concerning the furnishing of cars for said shipment were merged and contained in the written agreements. It was further alleged that the contracts stipulated that the shippers had the option of shipping the stock at a higher or lower rate, and that they had elected to accept the lower rate, and contained the provision that no agent of the carrier had authority to waive any clause of the contract, or to agree to furnish cars at any fixed time. The contracts offered in evidence were substantially as alleged.

The case was tried before the court, without a jury, and judgment was rendered for the plaintiffs for $967, with interest.

There was evidence showing that the delay of 24 hours at Brownwood, due to the nonarrival of the cars, had a damaging effect upon the cattle, causing them to stiffen and draw, and affecting their condition in transit. There was no market value, but there was evidence of intrinsic value, to a greater amount than allowed in the judgment. The evidence showed that one of the plaintiffs made request upon the local agent for the furnishing of cars at least seven days prior to the date they were promised, and that the agent agreed to have the cars on such date; and that the latter wired the superintendent of transportation, at Fort Worth, Tex., several days prior to such date.

It was shown by the evidence of defendant that there was no written contract entered into prior to the signing of the bill of lading, or the shipping contracts, and that no reason was offered why the cars did not arrive sooner; nor any record showing the cause of the delay. The local agent testified that neither the Director General of Railroads nor any one for him had given him authority to contract to furnish cars for any particular time.

The questions determinative of this appeal are the validity and controlling effect of the stipulations in the contracts, purporting to release the carriers from liability for all damages arising from the breach of any prior agreement with respect to furnishing cars, and the recital that the written contracts contained all promises and agreements relating to the shipment, and the limitations upon the authority of the agent to contract or waive any provision of the contracts.

[1] Certain legal propositions asserted in the brief for appellant must be conceded. It is settled by frequent adjudications of the Supreme Court that the act to regulate Commerce, and the amendatory acts of Congress (U. S. Comp. St. § 8563 et seq.) evidence a fundamental purpose to prevent unreasonable and unjust discrimination, and forbid every character of contract causing unlawful preferences and discrimination. Railway Co. v. Kirby, 225 U. S. 156, 32 Sup. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501; Underwood v. Hines (Mo. App.) 222 S. W. 1037; Thee v. Railway Co. (Mo. App.) 217 S. W. 566; Railway Co. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901; Railway v. Packing Co. (Tex. Civ. App.) 203 S. W. 1140; Railway Co. v. West Bros. (Tex. Com. App.) 207 S. W. 919; Keene v. Railway Co., 183 Iowa, 522, 167 N. W. 475. These cases are illustrative of the extent to which the courts have gone in giving effect to this prime purpose of the legislation. But none of the federal adjudications to which we have been cited were given upon a state of facts such as exist here.

[2] It is further settled, beyond controversy, by the decisions of the Supreme Court, that the acts of Congress on this subject became the rule of law governing such shipments in all the courts of the country; and that all state rules and regulations have been super-

seded by their provisions. Adams Exp. Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; St. L., I. M. & S. R. Co. v. Starbird, 243 U. S. 592, 37 Sup. Ct. 462, 61 L. Ed. 917. In the latter case, Mr. Justice Day reviews the decisions of the Supreme Court, and cites Southern Exp. Co. v. Byers, 240 U. S. 612, 614, 36 Sup. Ct. 410, 60 L. Ed. 825, L. R. A. 1917A, 197, quoting with approval this language:

"Manifestly, the shipment was interstate commerce; and, under the settled doctrine established by our former opinions, rights and liabilities in connection therewith depend upon acts of Congress, the bill of lading, and common-law principles accepted and enforced by the federal courts."

[3, 4] It must also be admitted that ordinarily any previous oral contract, relating to an interstate shipment, is superseded by the written contract. Express Co. v. Horse Shoe Co., 244 U. S. 58, 37 Sup. Ct. 595, 61 L. Ed. 990; Railway Co. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901. To the same effect is Railway Co. v. Miller (Tex. Civ. App.) 213 S. W. 734. It is also to be conceded that a carrier is entitled to the presumption that it is conducting its business lawfully. Railway Co. v. Beaham, 242 U. S. 148, 37 Sup. Ct. 43, 61 L. Ed. 210.

But it does not follow from any of the propositions granted that the clauses of the contract in question here are valid and binding upon the shippers. If they are violative of the policy of the federal statutes they cannot be upheld. We are unable to perceive any tenable ground for the claim that the case falls within the class of decisions denouncing contracts or waivers by carriers intended to operate or necessarily resulting in unlawful preferences or discriminations. The request for the service of furnishing cars at a given date, for the shipment of live stock, or the compliance therewith, would not seem ordinarily to tend towards a preference or discrimination. Certainly there is nothing in this record to indicate such a tendency or result.

In the federal statute itself it is provided that the term "transportation" shall include the service of furnishing cars, whether upon contract, express or implied, or not. It is also specifically made the duty of the carrier in interstate commerce to furnish cars upon reasonable request therefor. U. S. Comp. St. § 8563(2). This being the expressed intention of Congress, it would seem to be violative of the policy thus declared to permit a carrier to violate this duty and to contract against liability therefor, no matter for what consideration.

Under interpretations of the Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa) the Supreme Court has upheld provisions in contracts limiting the liability of the carrier, particularly with reference to agreed or released values of property, and requirements for the giving of notice of claims for damages. However, there has been more recent legislation, and we especially refer to what is commonly known as the Cummins Amendment, being the act of March 4, 1915 (chapter 176, U. S. Comp. St. § 8604a), which is applicable to this case. This amendment provides that carriers affected by the act shall issue a bill of lading and shall be liable to the lawful holder "for any loss, damage, or injury to such property * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier * * * from the liability hereby imposed"; and further that—

The carrier "shall be liable * * * for the full actual loss, damage, or injury * * * notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made, is hereby declared to be unlawful and void."

Before the enactment of the Cummins Amendment, the Interstate Commerce Commission had upheld the validity of a clause in a bill of lading limiting liability as to value, and even after the passage of such amendment considered that the clause was not invalid. But it matters not what were the interpretations of the Interstate Commerce Commission. The question is a judicial one. As stated by Mr. Justice Holmes, in Railway Co. v. McCaull-Dinsmore Co., 253 U. S. 99, 40 Sup. Ct. 504, 64 L. Ed. 803:

"But the question is of the meaning of a statute, and upon that, of course, the courts must decide for themselves."

That decision declared invalid, by virtue of the Cummins Amendment, a clause attempting to limit liability to the value of the property at the time and place of shipment, rather than at destination, which, under the rules of common law as enforced by the federal courts should prevail.

[5] We think the present case falls within the principles and reasoning of the last-cited case. The statute declares that the carrier shall be liable to the holder of the bill of lading for the actual loss to the shipper, and declares any attempt, no matter in what form, to limit this liability, to be unlawful and void. As we have seen, the service of furnishing cars is included within the transportation, which is wholly regulated by Congress; and by the Cummins Amendment the carrier is forbidden to limit his liability for actual loss occasioned by breach of the duty imposed by the statute. In this case it was claimed and proven that the shippers

made reasonable request, and seasonably, for the furnishing of cars, and established, at least prima facie, that the delay in furnishing such facilities was through the negligence of the carrier. Although the agent, upon whom demand was made, was upon the stand, no excuse of any character was offered for the default.

We have been unable to find in the federal legislation any intent by Congress, in attempting to promote uniformity of contracts and to prevent preferences and ·discriminations, to confer authority upon carriers or the Interstate Commerce Commission to sanction any clause avoiding liability for the negligence of the carrier, or a breach of a positive duty declared in the statute.

Even under the·Carmack Amendment Mr. Justice Lurton, in Adams Express Co. v. Croninger, supra, recognized that a common carrier cannot exempt itself from liability for its own negligence, or that of its servants, and that, while the rigor of common-law liability might be modified through any reasonable and just agreement with the shipper, this rule did not include exemption against the negligence of the carrier or its servants. We` are of the opinion that the policy of the federal statutes as now existing condemns the clause in question, and forbids the carrier from stipulating against liability for an unexcused failure to furnish cars upon reasonable request, prior to the issuance of the bills of lading; and that the question of liability was properly determinable upon common-law principles as' enforced by the federal courts. The proof in this case, in our opinion, meets these tests, and sustains the judgment.

[6] It is suggested in the brief that a carrier is presumed to conduct its business lawfully. The answer would seem to be that this presumption has been overcome by the proof of the facts in this case. It is also suggested that the local agent had ʼno authority to contract for furnishing cars at any particular date. Our Supreme Court has held otherwise in Railway Co. v. Jackson, 99 Tex. 343, 89 S. W. 968, and we know no federal rule to the contrary. It is not necessary that the authority should be actual. It is enough if it is fairly implied from the nature of the business intrusted to the agent. On this point, we also cite Railway Co. v. Stinson (Tex. Civ. App.) 181 S. W. 528. The proof shows that the stipulations, on this subject, were not known to the shippers, when the agreement for cars was made.

Neither does the record support the contention that plaintiffs were cut off from relying upon the verbal contract, and upon the negligence or breach of duty in failing to furnish the cars in time, because of the execution and recitals in the written contracts. The clause was not only prohibited by the federal law, but the facts· do not show a merger into the .written ʼagreement.

[7] There is presented the further question of the admissibility of certain testimony given by S. P. Burns, one of the plaintiffs. This related to the difference in the intrinsic value of the cattle at the time they arrived, and what it would have been if they had arrived 24 hours earlier. In view of the qualifications of the witness and the facts testified to by him, there was no error in admitting his opinion. Railway Co. v. Prunty (Tex. Sup.) 230 S. W. 396; Gatewood v. Railway Co. (Tex. Sup.) 232 S. W. 493.

Being of the opinion that no reversible error has been shown, the judgment is affirmed.

Affirmed.