BERTE E. CARPENTER vs. THE BALTIMORE AND OHIO RAIL-
ROAD COMPANY, a corporation of the State of Maryland.

*Case—Damage to Piano in Transportation—Common Carrier;*
*Liability of— General rule—Exceptions—Special Agree-*
*ment; Limiting Liability; Effect of—Damages—*
*Interest.*

1. A common carrier is one who undertakes and exercises, as a public employment, the transportation or carriage of goods for persons generally, from place to place, whether by land or water, and to deliver

them at the place appointed, for hire or reward, and with or without a special agreement as to price. He is bound to exercise the strictest care, and to deliver safely at their place of destination, the goods entrusted to him. He is regarded by the law in the light of an insurer.

2. The carrier, however, is not held responsible for loss or injury, occasioned by bad or imperfect packing, or other carelessness or negligence of the shipper; or for ordinary wear and tear and chafing of the goods in the course of their transportation, or for their ordinary loss or deterioration in quantity or quality, or for any inherent natural infirmity or tendency to damage, depreciation or decay, etc.

3. Where goods are injured during transportation, under such circumstances as to render the carrier liable, the measure of damage is the difference between the value of the goods in their damaged state and what would have been their value if delivered in good order, unless there was a special agreement between the parties fixing some other mode for the ascertainment of such damages.

4. Where there is a contract fairly made between the shipper and common carrier, whereby, in consideration of a reduced rate of freight, it is agreed, that in case of loss or injury, the carrier shall be liable only to the extent of an agreed valuation of the goods, such contract is valid and will operate as a limitation upon the liability of the carrier. But it is incumbent on the carrier to prove such special agreement to the satisfaction of the jury, and upon failure so to do, the said common law rule prevails.

5. If such special agreement is in writing it must be expressed in such manner and form as to be understood by a person of ordinary intelligence; or if not so expressed, it must be shown to have been explained to the person to be bound, unless such person himself had such knowledge of the subject as would enable him to understand the meaning of the writing.

6. Save under very exceptional circumstances, before a shipper can be bound by a condition or regulation in the bill of lading limiting liability, of which he has not actual knowledge, it must positively and particularly be brought to his attention.

7. There can be no recovery for any injury to the property after its arrival at destination and refusal to accept,

8. The jury may allow interest on the amount assessed as damages from the time the property arrived at place of destination and was tendered to the plaintiff.

*(February 23, 1906.)*

LORE, C. J., and SPRUANCE and BOYCE, J. J., sitting.

*Horace G. Knowles* for plaintiff.

*Andrew E. Sanborn* and *John W. Huxley, Jr.*, for defendant.

Superior Court, New Castle County, February Term, 1906.

ACTION ON THE CASE (No. 112, February Term, 1905).

SPRUANCE, J., charging the jury:

Gentlemen of the jury:—This action is brought by the plaintiff, Berte E. Carpenter, against the defendant, the Baltimore and Ohio Railroad Company, a corporation of the State of Maryland, to recover damages for the alleged injury or destruction, through the negligence of the defendant company, of a piano shipped by the Piedmont Feed and Ice Company acting as the plaintiff's agent, from Piedmont, West Virginia, to the plaintiff, in Wilmington, Delaware.

It is not disputed that the piano, with certain other articles of household furniture, numbering in all over eighty pieces, was shipped as aforesaid on November 12, 1902, and that at the time of said shipment a bill of lading or shipping receipt was delivered by the defendant company to said Ice and Coal Company, which was afterwards transmitted by mail by said last mentioned company to the plaintiff in Wilmington, and that the plaintiff in Wilmington on November 24, 1902, paid to the defendant the freight on said shipment amounting to $19.50.

The plaintiff claims that the said piano was properly cased and placed in a car of the defendant company at Piedmont, and that at the time of its shipment it was in good condition, and that upon its arrival in Wilmington it was found to be so broken and injured as to be of no value, and he therefore refused to accept or receive the same, and he now claims as his damages the sum of $270.

It is admitted that the defendant company is and was at the time of said shipment a common carrier.

"A common carrier is one who undertakes and exercises, as a public employment, the transportation or carriage of goods for persons generally, from place to place, whether by land or by water, and to deliver them at the place appointed, for hire or reward, and with or without a special agreement as to price."

*McHenry vs. P., W. & B. R. R. Co.*, 4 *Harr.* 448.

"A common carrier is bound to exercise the strictest care, and to deliver safely at their place of destination, the goods entrusted to him. He is regarded by the law in the light of an

insurer; and in case goods are injured, lost or destroyed, noth-
ing will excuse or discharge him, but the act of God, or of the
public enemies. By the act of God is meant, such inevitable
accident as cannot be prevented by human care, skill or fore-
sight; but results from natural causes; such as lightning and
tempest, floods, inundation," etc.

"This rule of the common law has been spoken of as severe
and rigorous; but like most of the principles of the common
law, it is founded in wisdom, and dictated by sound policy. The
exigencies of society require the adoption of the rule. Men en-
gaged in the various business transactions of life, are obliged
from necessity to entrust common carriers with their goods.
If such carriers are to be excused from all loss, destruction of,
or injury to goods, in case it be shown that they have used due
care, precaution, or attention, the party employing them, could
never show the want of such care, unless he had an agent to
accompany his goods during the whole time occupied in their
transportation. The carrier might at all times by fraud and
collusion, or by means of his own agents or servants, throw the
burden of proof upon the owner or consignee of goods, by mak-
ing out a statement of facts, which although untrue in itself,
would show the exercise of ordinary care and diligence.

"Therefore, in actions against common carriers, founded
on their ordinary liability for the loss of goods, the inquiry is
not whether the carrier has used due care, or been guilty of neg-
ligence, but whether he can show that the loss happened by
inevitable accident or by public enemies."

*McHenry vs. P., W. & B. R. R. Co.*, 4 *Harr.* 449; *Penne-*
*will vs. Cullen*, 5 *Harr.*, 241; *Reed vs. P., W. & B. R. R. Co.*, 3
*Houst.* 206; *Klair vs. Wilm. Steamboat Co.*, 4 *Pennewil* 53.

The above stated rule of law as to the liability of the carrier
is subject to certain qualifications as, for example, the carrier
is not held responsible for loss or injury occasioned by bad or
imperfect packing or other carelessness or negligence of the
shipper, or for ordinary wear and tear and chafing of the goods
in the course of their transportation, or for their ordinary loss

or deterioration in quantity or quality, or for any inherent natural infirmity or tendency to damage, depreciation or decay, etc.

*Truax vs. P., W. & B. R. R. Co.*, 3 *Houst.* 245; *Klair vs. Wilmington Steamboat Co.*, 4 *Pennewill* 52.

Where goods are injured during transportation, under such circumstances as to render the common carrier liable, the measure of damages is the difference between the value of the goods in their damaged state and what would have been their value if delivered in good order, unless there was a special agreement between the parties fixing some other mode for the ascertainment of such damages.

Where there is a contract fairly made between the shipper and the common carrier, whereby, in consideration of a reduced rate of freight, it is agreed, that in case of loss or injury, the carrier shall be liable only to the extent of an agreed valuation of the goods, such contract is valid and will operate as a limitation upon the liability of the carrier.

*Hart vs. Penna. R. R. Co.* 112 *U. S.* 331; *Balto. & Ohio R. R. Co. vs. Doyle*—in United States Circuit Court of Appeals for 3d Circuit—March Term, 1904 (not published).

It is claimed by the defendant company that such a contract was made between it and the shipper, whereby its liability was limited to $5 per 100 pounds of the goods transported by it, and, as the weight of the piano was proved to be about 800 pounds, the defendant claims that the plaintiff cannot in any event recover more than $40.

Tue plaintiff denies that there was any contract or agreement, express or implied, between the shipper and the railroad company touching the reduction of the valuation of the goods, or the liability of the company in case of loss or injury; and he insists that the only special agreement between the shipper and the company touching said goods was, that they should go by the local or slow freight line, on which the freight charge was less than on the through or fast freight line.

If a special contract was made between the shipper and the defendant whereby the liability of the latter was limited in

amount as claimed by it, then the plaintiff would not be entitled to recover damages exceeding $5 per 100 pounds weight of the property injured or destroyed, with interest.

Upon the face of the said bill of lading or shipping receipt is the following written in ink:

"Rel Val 500
per cwt"

It is upon this that the defendant chiefly, if not entirely, relies to prove said special contract or agreement. The defendant claims that the acceptance by the shipper of the said bill of lading so marked, was of itself a consent or agreement on his part to limit the liability of the defendant as above stated.

A common carrier cannot relieve himself of any portion of his common law liability for the loss or destruction of property carried by him, unless by express or implied contract with the shipper.

Whenever a common carrier claims that he has by special agreement been released by the shipper from the operation of the before mentioned common law rule for the ascertainment of damages in case of loss or injury to goods transported, it is incumbent on the carrier to prove such special agreement to the satisfaction of the jury, and upon failure so to do, the said common law rule prevails.

If such alleged special agreement is in writing it must be expressed in such manner and form as to be understood by a person of average intelligence; or if not so expressed, it must be shown to have been explained to the person to be bound, unless such person himself had such knowledge of the subject as would enable him to understand the meaning of the writing.

"Save under very exceptional circumstances, before a shipper can be bound by a condition or regulation in the bill of lading limiting liability, of which he has not actual knowledge, it must positively and particularly be brought to his attention."

*Balto. & Ohio R. R. Co. vs. Doyle (Supra)* citing the *Majestic*, 166 *U. S.* 375 and *Calderon vs. Atlas S. S. Co.*, 170 *U. S.* 272

We submit for your determination the question whether the shipper understood and agreed to the reduction of the car-

rier's liability as claimed by it, and in so doing you should take into consideration the said bill of lading, and the said memorandum thereon, and also all the other evidence before you bearing upon the question.

There can be no recovery in this action for any injury to or depreciation in the value of the piano after its arrival in Wilmington, and the refusal of the plaintiff to accept it. If your verdict should be for the plaintiff, you may allow interest on the amount you assess as the damages of the plaintiff from the time the piano arrived in Wilmington and was tendered to the plaintiff.

Verdict for plaintiff for $270.