JOHN W. COONEY COMPANY,

*vs.*

ARLINGTON HOTEL COMPANY.

*In re* Exceptions to Claim of PHILADELPHIA, BALTIMORE & WASHINGTON R. R. CO.

*New Castle, June* 9, 1916.

Charges for storing and unloading steel at the terminal are part of the transportation charges, which the carrier must charge and collect from the owner or consignee, until there is actual delivery, in accordance with its tariff schedules filed.

The mere fact that a railroad accepted less than the full amount due and gave its receipt in full does not estop it to collect the sum fixed by schedules filed.

Where the carrier accepted payment of demurrage charges and gave its receipt in full, the only effect was to deprive it of its lien on the property; but it could collect any sum due for storage charges.

Where the carrier contracted with the consignee to store certain steel, and sought to hold the owner liable for the charges, it had the burden of showing that the consignee acted as the owner's agent in the contract, since the consignee may contract on his own account.

Where the owner and the builder had a contract as to furnishing steel for the building, and the builder arranged with the carrier to store the steel until used, the owner, in seeking to avoid liability for storage charges, was bound to show that by its contract with the builder he was ultimately liable for such charges, and in the absence of such evidence the inference arises that the owner was ultimately liable.

STATEMENT OF THE CASE.   The Arlington Hotel Company, contracted with the Thompson-Starrett Company for the erection of a hotel in Washington, D. C., and among the materials to be used therein was certain structural steel, which was billed by the American Bridge Company to the Arlington Hotel Company and consigned to the Thompson-Starrett Company via. Philadelphia, Baltimore & Washington Railroad Company during the latter part of 1912 and early part of 1913. Each piece of steel was marked where it belonged in the building, and by arrangements between the freight agent at Washington and the Thompson-Starrett Company was unloaded on the "Ninth Street Yard" of the Philadelphia, Baltimore & Washington Railroad Company in Washington, in such manner as to be readily accessible and convenient for transferring it to the site of the building in the order in which it belonged in the building.

In February, 1914, Aulick Palmer and Peyton Gordon, both of the City of Washington, were appointed receivers of the Arlington Hotel Company by the Supreme Court of the District of Columbia, and subsequently they, together with J. Frank Ball, Esq., of Wilmington, Del., were appointed receivers of said company, by this court.

By virtue of an order of the Supreme Court of the District of Columbia, Messrs. Palmer and Gordon, as receivers of the Arlington Hotel Company, sold the structural steel on May 21, 1914, free of all charges against it, and from the proceeds of sale paid to the Philadelphia, Baltimore & Washington Railroad Company a check for $108 containing the following notation:

"In full for all claims for charges for demurrage or other charges against structural steel A. H. Co. to May 21, 1914."

Pursuant to notices to creditors of the Arlington Hotel Company to file their claims in this court, the Philadelphia, Baltimore & Washington Railroad Company filed a claim amounting to $41,858.25 for "unloading and storage charges" against the said structural steel, based on a charge of fifteen cents per ton for unloading and $1.00 per carload per day exclusive of Sundays and holidays, for storage to May 21, 1914, in accordance with schedules 4047 and 4470 filed by the Pennsylvania Railroad Company with the Interstate Commerce Commission; the Philadelphia, Baltimore & Washington Railroad Company being a branch of the Pennsylvania Railroad Company. Exceptions to this claim were filed by the receivers appointed by this court, in which it was claimed that no part of the claim is due the Philadelphia, Baltimore & Washington Railroad Company form the Arlington Hotel Company, or the receivers thereof.

The exceptions were heard on oral testimony of witnesses produced before the Chancellor, and at the hearing a charge $328.62 on a carload of stone, which had been erroneously included in said claim, was withdrawn by the solicitors for the claimant, and the claim reduced by that amount.

*John R. Nicholson*, and with him *Henry H. Glassie*, of the Washington, D. C., Bar, for the receivers, the exceptants.
*John Biggs* and *Armon D. Chaytor, Jr.*, for the claimant.

THE CHANCELLOR. It is clear, of course, that the bill of lading constitutes the contract not only respecting the charges for carriage, but also for services at the terminal, including unloading and storing the property transported by the carrier, and by the bill of lading these charges must be paid by the "owner or consignee." It is also clear that the amount of these charges must be those fixed by the carrier in the schedule filed with the Interstate Commerce Commission, and it is also shown that the carrier has made its charges for terminal service according to that schedule. It is also clear that the carrier has

parted with its lien for terminal charges so far as the case in this court is concerned. It is also clear that the Arlington Hotel Company was the owner of the steel, which had been purchased by it, and by its direction shipped to the Thompson-Starrett Company as consignee, the latter company having made a contract to erect the hotel using the steel for the purpose.

But the question at issue is not how much the charges should be, but who is now liable for the payment of them. In other words, the point to be determined is not how much is due, but who is the person liable for the payment of what is due. The recent case of *Southern Railway Company v. Prescott*, 240 *U. S. 632, 36 Sup. Ct.* 469, decided in the United States Supreme Court on April 10, 1916, settles the basis of the calculation of the storage charges, and shows that it is the amount charged by the railroad company in its claim filed in this cause, for that is based on its duty filed schedule. Until there has been an actual delivery of the goods by the carrier at the destination, it is the duty of the carrier to charge the fixed rate for unloading and storage, and in the case cited could not gratutiously hold the goods in storage or otherwise. In the case cited after the goods arrived at the destination the consignee owner paid the transportation charges, took part of the goods away and left the rest in the railroad storehouse to be removed later, and the court held that the relationship continued. "The actual service in holding the goods continued, and we must look to the bill of lading to determine the legal obligation attaching to that service." The parties were not at liberty to alter the terms of the service rendered by the carrier as fixed by the regulations filed with the Interstate Commerce Commission. In other words, as the solicitors for the railroad company here stated it:

"The unloading and storage of this steel was a terminal service furnished by the carrier and is part of the 'transportation' as defined by the Interstate Commerce Law."

For such service, therefore, the carrier was bound to charge and the owner or consignee pay at the rate fixed by the schedule.

If there had been no contract with any one on the subject there might have been an implied contract on the part of the

owner to pay them, particularly as the consignee was in some respects the agent of the owner.

From testimony of witnesses produced by the railroad company it appeared that it was arranged between the railroad company and the consignee (the builder) that the structural steel should be stored at a particular yard and in a certain manner to suit the convenience of the builder, and that it should be left there for a period of three or four months. The terms of this contract are not known, and it was not shown whether it was made by the consignee as agent for the owner or whether it contained a promise by the consignee to pay the carrier's terminal charges. The written evidence of the contract is in the possession of the railroad company and not of the hotel company, or its receivers, and the railroad company has refused on demand to produce the evidence.

It does appear from the testimony produced by the carrier, that there was an arrangement between the consignee, the builder, as to the storage of the steel, and neither the Arlington Hotel Company, nor the receivers, are connected by any evidence with that arrangement. There is, moreover, ample evidence to show that the carrier did not look to the Arlington Hotel Company, or the receivers, for payment of the charges. One of the receivers informed the proper officer of the railroad company that the receivers were about to sell the steel free of all charges, and inquired what the charges were. Later he received a statement of charges for demurrage, but none for unloading or storing the steel. Furthermore, the charges as then claimed were paid to the carrier by the receivers by check containing on its face when accepted by the carrier a statement as follows: "In full for all claims for charges for demurrage or other charges against structural steel A. H. Co. to May 21, 1914," the date being the date of the sale of the steel and the intiails "A. H. Co." being indicative of the name "Arlington Hotel Company." No claim for payment of the charges here claimed was made by the railroad company against the receivers who administered the assets of the Arlington Hotel Company in the District of Columbia.

The fact that the railroad company accepted from the receivers appointed in the District of Columbia a less sum for the unloading and storage of the steel does not deprive it of a right to collect the amount due according to the schedule. This has been so settled in cases where the transportation charges have actually been paid, and notwithstanding an executed contract fully performed, the carrier was allowed to collect more money for transportation up to the full scheduled rates. This was so held in *Louisville, etc., R. R. Co. v. Maxwell,* 237 *U. S.* 94, *L. R. A.* 1915E, 665, where the carrier by mistake sold a ticket for less than the fixed rate and afterwards recovered from the traveler the balance of the price of the ticket according to the true rate. In that case the Supreme Court said:

"Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed."

And the court quoted from the case of *Kansas City So. Ry. Co. v. Carl,* 227 *U. S.* 639, as follows:

"Neither the intentional nor accidental mis-statement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact and that which the shipper must pay."

The only effect of the acceptance from the receivers of the demurrage charges was to divest the company of its lien on the property stored, but did not deprive it of its right of action for the terminal service charges.

Inasmuch as the carrier had already made some contract with the builder respecting the storage of the steel, the terms of which it declined to show, and had accepted from the owner a sum for demurrage charges and for other charges, and did not file any claim in the receivership in the District of Columbia, it is a fairly deducible inference that the carrier then looked to the consignee, the builder, and not the owner for payment of the other charges, viz: those for unloading and storage.

It is urged by the carrier that the builder was acting as agent of the owner, and, therefore, the latter was liable. There were some general statements in the evidence as to some kind of an agency between the builder and owner, but whether or

not the agency extended to the making of a contract concerning storing the steel is not shown.     But assuming that there was in fact such an agency, it still was not shown by the carrier, who is bound to show it, that the builder made as agent for the owner a contract as to storage, and not on its own account. There is surely no reason to prevent the consignee from so contracting on its own account and not as agent.    The acts of the carrier and its refusal to prove the real contract made by it with the builder inferentially show that the contract with the builder was not made as agent for the owner, but otherwise.

Notwithstanding all that has been said above, there remains one further point which, under the circumstances, is the determining factor as to the liability of the Arlington Hotel Company to pay the charges in question.    The Arlington Hotel Company bought and had shipped to Washington structural steel for use in the erection of a hotel, and this material belonged to it.    It had made a contract with the Thompson-Starrett Company to erect the hotel.    After the steel arrived, consigned to the builder and not to the owner, the former arranged with the carrier to unload the material and store it on a particular parcel of land of the carrier and in a particular way for the convenience of the builder.    Assuming for the purpose of the argument, that the builder agreed to pay the charges for this service rendered by the carrier, not as agent for the owner, but on its own account, which is as far as the owner's contention could go, based on the refusal of the carrier to show what was in fact the contract between it and the builder, the consignee.    Still as between the builder and the owner the question remains as to which was by the contract between them ultimately required to pay these charges.    If by the contract the Arlington Hotel Company was required to furnish to the builder the structural steel, the builder being only required to erect the hotel, then a delivery at the railroad terminus was not necessarily a delivery to the builder of the building material, and the material was not furnished to the builder until it reached the site selected for the hotel.    Evidently there was some reason why the steel was not at once removed to the hotel site, and why the builder arranged for its storage by the

carrier for three or four months. No explanation of this has been made. Neither does it appear whether by the contract for erecting the hotel these storage charges were payable by the builder or owner. If ultimately they were payable by the owner, then there is no reason why the assets of the owner should not in this court, in this cause, be made liable therefor, without circuity of action involving delay and expense. If however, under the contract between the builder and the owner the bulider was liable therefor, and the builder had assumed to pay the carrier, then the carrier cannot here collect the charges either from the Arlington Hotel Company, or its assets in the hands of its receivers.

No proof was made as to the contract between the builder and the owner, though proof of this was peculiarly within the power of the receivers and not of the carrier. True no effort was made by the carrier to prove it. But if the contention made by the solicitors for the receivers with respect to the duty of the carrier to prove the contract between it and the consignee, as to the storage of the steel, be correct, it was equally the duty of the receivers to prove the contract between the owner and the builder with respect to paying storage charges, if there was such a provision in that contract, or at least to show that there was no provision, or to show such a state of facts from which it would result legally that the builder and not the owner was liable for the storage charges. Failing in this proof, the only inference which is fairly deducible is the one that as between the builder and the owner the duty to pay the storage charges was on the owner, whatever may have been the contract of storage as between the builder and the carrier.

The conclusion above reached is not affected by the fact that upon inquiry by the receivers the carrier in effect made no claim for unloading and storage and accepted from the receivers a sum for demurrage and for any other charge on the steel. Either it was a mistake of the carrier, or it intentionally omitted to make a claim at that time, because the consignee had agreed with the carrier to pay the charges. In either event, as above shown, the right to collect the charges from the owner was not lost.

In brief, then, by the bill of lading either the "consignee or owner" were liable for payment of these charges for unloading and storing the goods, and inasmuch as under the facts here the owner, the Arlington Hotel Company, was ultimately liable for the payment of the charges, the carrier has a right to enforce payment from the assets of the Arlington Hotel Company now being administered in this court in this case, even though it had made a contract with the consignee respecting the unloading and storage of the steel.

The exceptions to the claim will, therefore, be overruled and the claim allowed.

Let an order be entered accordingly.