# ACME-EVANS COMPANY

*vs.*

## BALTIMORE AND OHIO RAILROAD COMPANY.

*Action Against Carrier—Limitations—Period of Federal Control.*

The provision of the Transportation Act of 1920, section 206 (f), that the period of federal control shall not be computed as a part of the periods of limitation in actions against carriers for causes of action arising prior to federal control, applies only to statutory limitations, and has no application to the limitations contained in tariffs established by a carrier with the approval of the Interstate Commerce Commission, such limitations being contractual in their nature.

*Decided February 13th, 1923.*

Appeal from the Superior Court of Baltimore City (STANTON, J.).

Action by the Acme-Evans Company against the Baltimore and Ohio Railroad Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued, together with that next following, before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Stuart S. Janney* and *Frank B. Ober,* with whom were *Theodore L. Bailey* and *Janney, Stuart & Ober* on the brief, for the appellant.

*Duncan K. Brent,* with whom was *Allen S. Bowie* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellant on the 29th day of August and the 12th day of September, 1917, delivered to the appellee, the Baltimore and Ohio Railroad Company, at Indianapolis, in the State of Indiana, 1,204 bags of wheat flour consigned to the order of the appellant, the Acme-Evans Company, Inc., care of Guthrie, Baltimore, Maryland.

The flour was transported to Baltimore by the appellee, but upon its arrival there it was destroyed by fire on October 29th, 1917, while in the custody of the appellee at its Locust Point terminal.

On the 21st of December, 1921, the appellant brought suit against the appellee to recover for the loss of the flour. The declaration filed by it contained six of the common counts, and one special count, in which it is alleged that the flour was delivered to the defendant at the time and place stated consigned to the plaintiff at Baltimore, Maryland, care of Guthrie; that defendant issued to it bills of lading dated as of the days of delivery, in which it agreed, in consideration of the money paid to it, to transport the flour from the place of delivery to the point of destination and then to deliver it to the consignee; that it failed to deliver the flour but permitted the same to be destroyed.

To this special count of the declaration the defendant pleaded: First. "That the alleged cause of action did not accrue within three years before the institution of this suit"; and second. "That the loss or damage complained of in the plaintiff's declaration occurred prior to the dates on which the shipments in question should have been delivered by the defendant, and that this suit was not instituted within two years and one day after a reasonable time for delivery had elapsed, as is required by the terms of the published classification and tariffs of the common carriers who transported said shipments, and under which classifications and tariffs said shipments moved and that said classifications and tariffs were legally published and filed with the Interstate Commerce

Commission, and were effective at the time the said shipments were made."

The plaintiff demurred to both of these pleas; the court sustained the demurrer to the first, but overruled the demurrer to the second plea. Thereupon the plaintiff filed its replication to the defendant's second plea, saying: "The bills of lading issued for the shipments referred to in the declaration contained no provisions limiting the time for instituting suit," and with the replication were filed the bills of lading.

The defendant demurred to plaintiff's replication and the same was sustained. The plaintiff thereafter declined to amend, and judgment was entered on the demurrer for defendant's costs. It is from that judgment that the appeal in this case was taken.

The sole question presented by the appeal is whether plaintiff's claim was barred by the limitations contained in the interstate tariffs established by the plaintiff with the approval of the Interstate Commerce Commission, which were in effect at the time shipments were made. The limitations referred to are as follows: "Suits for loss, damage, or delay shall be instituted only within two years and one day after delivery of the property and in case of failure to make delivery then within two years and one day after a reasonable time for delivery has elapsed."

It is contended, however, by the appellant, that the above provision of the tariffs cannot be successfully relied upon by the appellee because of section 206 (f) of the Transportation Act of 1920, which provides that, "the period of federal control shall not be computed as a part of the periods of limitation in actions against carriers * * * for causes of action arising prior to federal control."

The flour, as we have said, was shipped on August 29th and September 12th, 1917, and was destroyed by fire on October 29th, 1917, and the suit was instituted on the 21st of December, 1921. The period of federal control commenced December 28th, 1917, and terminated March 1st, 1920. If

the period of federal control is not to be computed as a part of the period of limitations, then the action was brought within two years and one day after a reasonable time for the delivery of the flour had elapsed, but if such period of federal control is to be computed as a part of the period of limitations, then the action was not brought within the required time.

It is contended by the appellant, first, that the tariff period of limitations is not, as claimed by the appellee, contractual, but statutory in nature; and, secondly, if such limitations are held contractual in their nature, they are still extended by section 206 (f) of the Transportation Act.

Both of these questions were presented to and decided by the Circuit Court of Appeals on January 18th, 1922, in *New York Cent. R. Co.* v. *Lazarus,* 278 Fed. 900. The facts in that case were as follows:

On May 12th, 1917, at Singapore, China, there was delivered to the Seattle Vladivostock Steamship line 994 slabs of tin to be carried to Seattle, Washington, by the Steamship Louise Neilson, and then by rail to New York. The tin was consigned to the defendant in error. Two bills of lading were issued by the ship's agents at Singapore but, as in this case, neither of them contained the provision as to limitations in the tariffs, although the defendant, before receiving the shipments, had published and filed a uniform bill of lading with the Interstate Commerce Commission containing provisions as to such limitations.

Upon delivery of the tin to the rail carrier at Seattle no bill of lading was issued at that place. Eventually the intermediate rail carriers delivered the tin to the defendant for transport to New York, and the defendant also gave no bill of lading. The two shipments reached New York on August 13th and 17th, 1917, and within a day or two thereafter a shortage was discovered in each shipment, presumably due to some theft in New York freight yards. After the discovery of the shortage the parties negotiated over a long period of

time as to liability, and the plaintiffs commenced no action until the 29th day of September, 1919, more than two years and one day after the loss had been discovered.

The rate at which the tin was carried corresponded with the rate provided by the tariffs published and filed by the defendant with the Interstate Commerce Commission which were in effect at that time.

The plaintiff in the lower court (*Luzarus* v. *New York Cent. R. R. Co.,* 271 Fed. 93), recovered a judgment, but this was reversed on appeal (*New York Cent. R. R. Co.* v. *Lazarus,* 278 Fed. 900). The Circuit Court of Appeals in that case said:

"There were two through bills of lading issued by the steamship company in China, but they were not on file with the Interstate Commerce Commission. The interstate tariffs established by the plaintiff in error and applicable to this shipment were conditioned on the terms and conditions of the form of the uniform bill of lading. Therefore the liability, if any imposed, must be determined by the conditions of the uniform bill of lading. As a defense, the following provision of the uniform bill of lading was pleaded:

" 'Suits for loss, damage, or delay shall be instituted only within two years and one day after delivery of the property or in case of failure to make delivery then within two years and one day after a reasonable time for delivery has elapsed.'

"This action was not commenced within two years and one day after delivery of the property referred to in the complaint, or within two years and one day after a reasonable time for delivery of the property had elapsed. The rate charged by the plaintiff in error for the transportation of the tin was the rate contained in the tariffs and classifications for the transportation of property shipped subject to the terms and conditions of the uniform bill of lading. The tariffs and classifications were fixed at a higher rate for the transportation of property when not subject to all the terms and conditions of the uniform bill of lading. The consignments of tin were received by rail carrier at Seattle, Wash., on June 17,

1917, and delivered in New York City, with the exception of the 183 missing slabs, on the 21st of August, 1917. The rate paid for the transportation was 56.02 cents per 100 pounds, which is the rate contained in the transcontinental east-bound import tariff, duly published and filed with the Interstate Commerce Commission, and in effect at the time the rules and regulations filed with the Interstate Commerce Commission provided that the above mentioned rate applies to properties shipped subject to all the terms and conditions of the uniform bill of lading which are contained in said classification. The rate charged when the consignor notifies the carrier that he elects to have his property transported subject to carrier's common-law and statutory liability, and not subject to all the uniform bill of lading conditions, is 10 per cent. higher than the rate charged for transportation of property subject to all those terms and conditions. * * * Claims were presented for the loss of the property in question on August 21, 1917, and investigations and other negotiations were pending up to the time of the commencement of this action.

"(1) It is contended that the condition of the bill of lading as to the time within which this action must be commenced was suspended by virtue of the provisions of the Transportation Act of February 28, 1920 (section 206f [41 Stat. 462]). It provides: 'The period of federal control shall not be computed as a part of the periods of limitation in actions against carriers or in claims for reparation to the commission for causes of action arising prior to federal control.'

"Section 206 (a) relates to causes of action arising out of federal control, and provides: 'Such actions, suits, or proceedings may, within the periods of limitation now prescribed by state or federal statutes, but not later than two years from the date of the passage of this act, be brought in any court which but for federal control would have had jurisdiction of the cause of action had it arisen against such carrier.'

"It is contended that section 206 (f) of this act invalidates the period of limitation set forth in the conditions of the uni-

form bill of lading, and that therefore this action was commenced in time. The argument is that section 206 (f) applies to all periods of limitations, whether applied by contract, regulation or statute. As the phrase 'periods of limitation' is used in these sections of the Transportation Act, we think the words apply to limitations 'now prescribed by the state or federal statutes.' We think Congress did not intend a different meaning in the use of the words 'periods of limitations,' as used in paragraph (f), than their meaning as defined in paragraph (a). A phrase repeated in several sections of the statute will bear the same meaning throughout the statute, unless a different intention clearly appears. It will be presumed to be used in the same sense, and where its meaning is clear in the one instance, the same understanding will be attached to it elsewhere, unless the legislative body makes clear its intention that it be used in a different sense. *Wells Fargo & Co.* v. *Taylor,* 254 U. S. 175, 41 Sup. Ct. 93, 65 L. Ed. 205.

"Of the same act section 438 was an amendment and provided that: 'It shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claims than ninety days, for the filing of claims than four months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice.'

"The changes made in this section indicate clearly that Congress did not intend section 206 (f) to apply to provisions in tariff schedules which the common carrier is required to file with the Interstate Commerce Commission. The provisions upon which the plaintiff in error relies as a defense was contained in the contract of transportation, and not in a state or federal statute. And it appears that, if Congress intended to provide in section 206 (f) of the Transportation

Act that the period of federal control should not be included in computing the time specified in the uniform bill of lading conditions, it would have so stated in section 438 of the act, which relates to the provisions of tariff schedules. *Louisville Cement Co.* v. *Interstate Commerce Comm.*, 246 U. S. 644, 38 Sup. Ct. 408, 62 L. Ed. 914.

"* * * Section 20 of the Interstate Commerce Act (Comp. St. secs. 8604a, 8604aa) merely prohibits a carrier from incorporating in a bill of lading conditions which it is required to file with the Interstate Commerce Commission. By a provision requiring suits be instituted within less than two years from the time the cause of action accrues prior to March 4, 1915, the date of the amendment to the Interstate Commerce Act, it was lawful for a carrier to provide in the bill of lading or file tariff schedules that claims should be presented and suits brought within a much shorter period than that fixed by the statute. *So. Pacific R. R. Co.* v. *Stewart,* 248 U. S. 446, 39 Sup. Ct. 139, 63 L. Ed. 350; *Missouri, Kansas & Texas Ry. Co.* v. *Harriman,* 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690. From the last quoted cases it is apparent that the right of the carrier to provide 'a rule, contract, or regulation,' that suits must be brought within a reasonable time is not derived from the statute, but existed before the statute was enacted. The statute prohibits the carrier from inserting a provision in the uniform bill of lading conditions which it is required to file with the commission and which, when filed, constitutes the contract of shipment that suits must be tried within less than two years from the time the cause of action accrues.

"(3) By the schedules filed with the Interstate Commerce Commission by the plaintiff in error, two forms of agreement for transportation of property were given to the shipper. One was known as the uniform bill of lading, with its conditions referred to, requiring that suits should be instituted within two years; the other contained no provisions with respect to the time for the commencement of actions. It is clear

to us that in the uniform bill of lading the condition as to the two years became a part of the agreement for the transportation of the property in question. *Chicago, Rock Island and Pacific Ry. Co.* v. *Crammer,* 232 U. S. 490, 34 Sup. Ct. 383, 58 L. Ed. 697. The time within which the defendants in error were entitled to bring an action is therefore one fixed by the contract and not by the statute, and the extension of time granted by the provision of the Transportation Act does not permit adding thereto the periods of federal control, and it cannot apply, so as to change the terms of the contract entered into between the carrier and the shipper. Congress had the right to suspend the operation of the statute of limitations where the statute deals solely with the remedy, and does not at the same time destroy liability if the action is not brought within the prescribed time.

"(4) The suspension of the statute of limitations in actions on personal debts does not, as applied to the debtor, deprive him of property in violation of the Fifth Amendment. *Campbell* v. *Holt,* 115 U. S. 620, 6 Sup. Ct. 209, 29 L. Ed. 483. And the reason therefor is that Congress had the right to extend the statute of limitations because the right to bring the action did not enter into or become a part of the contract. But where the time within which an action could be brought is agreed upon by the terms of the contract of shipment, it is one of the terms and conditions thereof and Congress could not deprive the plaintiff in error of this property right, for to do so would be a violation of the provisions of the Fifth Amendment. The *Harrisburg,* 119 U. S. 199, 7 Sup. Ct. 140, 30 L. Ed. 358; *Phillips Co.* v. *Grand Trunk Ry.,* 236 U. S. 662, 35 Sup. Ct. 144, 59 L. Ed. 774; *Central Vt. Ry.* v. *White,* 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916 B, 252. It was held in *Jones* v. *Delaware, L. & W. R. R. Co.,* 114 Atl. (N. J. Court of Errors and Appeals), that section 206 (f) was inapplicable to actions under the federal Employers' Liability Act of 1908 (Comp. St. secs. 8657-8665)."

JUDGE HAND, sitting in the Federal District Court, in *Lazarus* v. *New York Central Railroad, supra,* accepted the argument of the defendant that the phrase "periods of limitation" refers only to limitation by statute and does not include a limitation such as that derived from a bill of lading filed with the commission, but held that as there was no bill of lading in that case, the period was not fixed by contract between the carrier and the shipper, but by legislative permission, and that such limitation derived its force from positive law rather than contract. It is upon this ground that JUDGE HAND rested his decision.

In the still later case of *Thomas Canning Company* v. *Southern Pacific Company* (Mich.), 189 N. W. 210, decided July 20th, 1922, the plaintiff shipped from points in California to itself in Grand Rapids, Mich., three car loads of beans; the dates of shipments were January 8, March 9, and March 23, 1917. The defendant was the initial carrier. Only one of the bills of lading issued thereon contained said provision as to limitations in respect to the time in which suit might be brought thereon for loss, damage or delay.

The last of the shipments was delivered to the plaintiff at Grand Rapids on April 17, 1917. There was a shortage in two of the shipments, and the other shipment was damaged by oil. The action was brought November 8, 1920. The questions presented in this case were presented in that case and the trial court adopted the contention of the plaintiff and rendered judgment in its favor and an appeal was taken therefrom. CHIEF JUSTICE FELLOWS, speaking for the Supreme Court of Michigan, said:

"When this case was tried in the court below the only case from the federal courts squarely deciding the questions here involved cited to the trial judge was *Lazarus* v. *New York Central R. R.* (D. C.) 271 Fed. 93. So far as we are advised by counsel, or so far as we are able to discover, that case was then the only federal decision squarely deciding the questions involved in this case. It sustained the plaintiff's con-

tentions. The questions, being federal questions, the court quite properly followed it. Since this case was tried, that case has been reviewed in the Circuit Court of Appeals, Second Circuit, and will be found reported in 278 Fed. 900, under the title of *New York Central R. Co.* v. *Lazarus et al.* The Circuit Court reversed the District Court, and in the opinion filed sustains fully the contention of the defendant in the instant case. We agree with the conclusion reached by the Circuit Court of Appeals, * * *.

"The first question which confronts us is whether the schedules and tariffs of defendant company filed with the Interstate Commerce Commission become a part of the contract of shipment and as a part of the contract binding upon the parties to it. Incidental to and as a part of this question is the inquiry as to whether the relation of the parties was contractual or a status fixed by operation of law. In the schedules filed with the Interstate Commerce Commission it was stated that, unless otherwise provided, the uniform bill of lading was to be accepted and used. The shipper, however, was given the option of electing not to ship under and be bound by the bill of lading with the limitations found in it, and if he so elected and paid a higher rate a different liability of the carrier was thereby created. The plaintiff did not elect to pay the higher rate and secure the greater liability, but paid the rate provided for if the uniform bill of lading was used."

The court, after further discussing the question at some length, and after citing a number of cases, including the *New York Central R. R. Co.* v. *Lazarus, supra,* said:

"All of these cases and many others hold that the tariffs and schedules filed with the Interstate Commerce Commission become a part of the contract, and as such binding on the parties. To hold otherwise would open wide the door for unjust discrimination."

The court then construed section 206 (f) of the Transportation Act in respect to the period of limitations, in which it

followed the line of reasoning and adopted the conclusion of the Circuit Court of Appeals in *New York Central* v. *Lazarus, supra.*

The next and only other case to which our attention has been called directly deciding the question here presented, is *Taylor* v. *Cinn. N. O. & T. P. T. T. Co.,* decided on December 8th, 1922, and which is not yet reported. In that case the appellant shipped a carload of eggs from Somerset, Pulaski County, Ky., to New York on October 28, 1916, and the carrier issued to him a bill of lading containing the limitation clause above mentioned and set out. In the course of transportation, the eggs were damaged, as claimed, and suit therefor was brought against the carrier. The appellant filed with his petition the bill of lading. A demurrer to the petition was sustained and the appellant declining to plead further, the petition was dismissed. An appeal was taken therefrom to the court of appeals, where an affirmance of the judgment was asked, "First—because the clause quoted does not include contractual limitations; and Second—the right to a defense given under a contract is property, and to construe the clause as nullifying a contractual limitation that was complete when the Transportation Act was passed would violate the due process of law guaranteed in the Fifth Amendment of the federal Constitution."

As stated in the opinion of the court, it was upon the second question that the lower court rested its decision and it was upon that question the case was chiefly argued in the higher court, and that court, speaking in respect to such question, said:

"The case is not stronger than if a statute were involved, and, as we have seen, a statute of limitation can be made ineffective in a given case by legislation passed after the bar of the statute has fallen. That being true, certainly a period of limitation fixed by the parties to a contract is subject to like control by the authority that empowered the parties so to fix the period. The Transportation Act is an attempt to exer-

cise that control, and, in our judgment, it is effective even to
the extent of nullifying a claim of contractual limitation in
existence at the time the act was passed."

The court likewise decided in favor of the appellant upon
the first question presented, holding that the "periods of
limitation" mentioned in section 206 (f) of the Transporta-
tion Act are applicable to limitations fixed by the parties in a
contract of shipment. It was said by the court:

"The language of the clause in question is broad enough to
include every kind of period of limitation. To restrict it to
statutory limitations would practically render it a nullity,
since the bills of lading are uniform and the limitations
therein are necessarily standardized and in general use. The
clause was plainly intended, in our opinion, to include all
periods of limitation in actions against carriers, whether they
be fixed by statute or by contract authorized by the federal
government. So on this ground, as well as the other, the con-
tention of appellees must be denied."

In the above cited case, the court did not refer to or cite
either the *Lazarus* case or the *Thomas Canning Company* case.

An examination of all the cases from which we have quoted
will disclose that in none of them has it been held that the
limitation clause in a bill of lading filed with the commission
and issued with the shipment is a statutory limitation; but
all of them, including the *Lazarus* case in the district court,
and the *Taylor Company* case in the Kentucky Court of Ap-
peals, recognize and treat such limitation as contractual, and
it is only in the *Taylor Company* case that it is held that the
period of limitation mentioned in the section 206 (f) of the
Transportation Act applies to both statutory and contractual
limitation. JUDGE HAND, in the *Lazarus* case in the district
court, after considering sub-section 206 (f) in connection
with sub-section 206 (a), said "there is good reason for inter-
preting the phrase, 'periods of limitation' in the same way in
each sub-section and I accept defendant's argument *pro
tanto."* It was because there was no bill of lading issued

in that case containing the limitation clause, that he held there was no contract between the carrier and the shipper within the meaning of the act, and that the limitation contained in the tariffs, under which the goods were shipped, was not a contractual limitation but a statutory limitation. It was upon this ground that he rested his decision, and in no other respect were the views of the appellate court inconsistent with those expressed by him.

The Federal Circuit Court of Appeals in the *Lazarus* case, and the Supreme Court of Michigan in the *Thomas Canning Co.* case, held that the limitation clause in the tariffs filed with the commission under which goods are shipped, as well as the limitation clause in a bill of lading, issued with the shipment of goods, is a contractual and not a statutory limitation, and that the phrase "periods of limitation" in section 206 (f) does not apply to contractual limitations, and their reasons for so holding have been fully stated herein.

In the case before us, bills of lading were issued, but they do not contain the limitation clause, although the rates charged were those corresponding to the tariff rates where the goods are shipped subject to such clause. This omission, however, did not affect the liability of the parties, for it was not within the power of the carrier to change the terms and provisions of the tariffs approved by the commission without changing the rates to correspond with the changed terms of the contract. It was therefore, the tariffs, and not the bills of lading, as made out, that constituted the contract between the parties in this case.

The appellant, had it so elected, could have obtained contracts for the transportation of the flour without the limitation clause, but this it could only do upon paying the higher rates contained in the tariffs filed with the commission.

The question, whether the phrase "periods of limitation" includes the limitation in the contract in this case, is a federal question and we are disposed to follow the decision of the federal court in *New York Central* v. *Lazarus*, 278 Fed. 900, in which the reasoning appears to be sound.

Since writing the above, we have received from the Department of Justice, among other opinions, the decision of the Supreme Court, rendered on January 29th, 1923, in *Leigh Ellis & Co.* v. *James C. Davis, agent;* and while we realize that the case is not altogether like this, it refers to the *Lazarus* case, and MR. JUSTICE HOLMES, in speaking of the Transportation Act, said, "that the general purpose was to limit not to extend rights of action and that we cannot suppose that it was intended to invalidate existing contracts good when made."

It follows from what we have said that the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*