THOMAS T. WINDSOR, trading in the name and style of Windsor Hotel, *v*. AMERICAN RAILWAY EXPRESS COMPANY.

(*February* 15, 1928.)

RICE and HARRINGTON, J. J., sitting.

*James M. Tunnell* for plaintiff.
*Charles W. Cullen* for defendant.

Superior Court for Sussex County, No. 17, February Term, 1926.

HARRINGTON, J., delivering the opinion of the court:

The verdict being for the plaintiff, by agreement of counsel, it is necessary for us to determine the amount of such verdict, and the judgment to be entered thereon.

The answer to this question depends upon the construction of the contract between the shipper and the carrier. But, as an interstate shipment is involved, it is, also, necessary to consider certain amendments to the *Interstate Commerce Act* (49 *U. S. C. A.* § 20; *Comp. St.* § 8604a).

In *Adams Express Co. v. Darden*, 265 *U. S.* 265, 44 *S. Ct.* 502, 68 *L. Ed.* 1010, decided by the Supreme Court of the United States in May of 1924, the court said:

"The first *Cummins Amendment* (*Act March* 4, 1915, *c.* 176, 38 *Stat.* 1196, 1197, *Comp. St.* § 8604a [49 *U. S. C. A.* § 20]) provides that a common carrier receiving property for transportation in interstate commerce 'shall issue a receipt or a bill of lading therefor,' shall be liable 'for the full actual loss, damage, or injury to such property (shipped) caused by it,' that 'no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier * * * from the liability hereby imposed,' and that such liability for the full actual loss shall exist 'notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void.' The effect of this act is to nullify provisions limiting liability contained in public tariffs and in bills of lading."

Though the shipment in dispute was made while the Act of March 4, 1915, was in force, in a subsequent part of the same opinion, the court, also, said:

"The enactment of the second *Cummins Amendment,* in the following year (*Act of August* 9, 1916, *c.* 301, 39 *Stat.* 441, *Comp. St.* § 8604a [49 *U. S. C. A.* § 20]), indicates merely that the provisions of the 1915 act proved to be more comprehensive than was found to be desirable."

The amendment of 1916 contained the following clause:

"Provided, however, that the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery, or representation, or agreement, or release, as to value, and declaring any such limitation to be unlawful and void, shall not apply * * * to property, except ordinary live stock, received for transportation, concerning which the carrier shall have been or shall hereafter be expressly authorized or required, by order of the Interstate Commerce Commission, to establish and maintain rates dependent upon the value declared in writing by the ship-

per, or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, and shall not, so far as relates to values, be held to .be a violation of section 10 of this Act to Regulate Commerce, as amended."

*American Railway Express Co. v. Levee* (1923), 263 *U. S.* 19, 44 *S. Ct.* 11, 68 *L. Ed.* 140, involved the construction of the act of 1916, and the court, in considering a paragraph of a contract containing precisely the same language as that contained in paragraph 2 of the receipt given to the plaintiff in this case, said:

"Coming to the merits, the limitation of liability was valid. * * * Under the law of the United States governing interstate commerce the stipulation constituted a defense to liability beyond $50, unless the plaintiff should prove some facts that took the case out of the protection of the contract. It had that scope in whatever court it came up."

See, also, *Adams Express Co. v. Croninger,* 226 *U. S.* 491, 33 *S. Ct.* 148, 57 *L. Ed.* 314, 44 *L. R. A.* (*N. S.*) 257; *Union Pacific R. R. Co. v. Burke,* 255 *U. S.* 317, 41 *S. Ct.* 283, 65 *L. Ed.* 656; *Carpenter v. B. & O. R. R. Co.,* 6 *Penn.* 19, 64 *A.* 252; *Klair v. Philadelphia, B. & W. R. Co.,* 2 *Boyce* 297, 78 *A.* 1085; *Klair v. Wilmington Steamboat Co.,* 4 *Penn.* 51, 54 *A.* 694.

In ·*American Railway Express Co. v. Lindenburg* (1923), 260 *U. S.* 584, 43 *S. Ct.* 206, 67 *L. Ed.* 414, the value of the shipment was neither stated by the shipper nor demanded by the carrier. A receipt, containing the same language that appears in paragraph 2 of the receipt involved in this suit, was delivered to the shipper, and the charges paid were based on the limited liability provided for in that clause.

The contents of the·trunks shipped were worth a considerable sum of money, but the court, not only applied the same principle above stated, but held that the shipper was bound by the limited value clause, though he had merely accepted a receipt containing that clause and had not signed such receipt, or otherwise agreed upon or declared a value in writing.

The court said that:

"Neither the statute nor the order of the Commission [the Interstate Commerce Commission] requires the signature of the shipper. The pertinent

words of the statute are: ' * * * Rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value.' "

It, among other things, also said:

"The respondent, by receiving and acting upon the receipt, although signed only by the petitioner, assented to its terms, and the same thereby became the written agreement of the parties. * * * In the absence of a statutory requirement, signing by the respondent was not essential. * * * This signature, to be sure, would have brought into existence additional evidence of the agreement but it was not necessary to give it effect."

The plaintiff, apparently, does not dispute the conclusions necessarily drawn from the above cases, and that they would ordinarily control this court. He contends, however, that they are not applicable to this case because that part of the language printed on the face of the contract immediately following the word "Note," and included in that paragraph, composed a part of it, and provided that a declared or released value to bind the shipper must be inserted at the proper place in the contract, and that such contract must be signed by the shipper.

As we view it, the language referred to is not a part of the contract between the plaintiff and the express company, but was merely intended to indicate to the shipper what he might do if he wished to declare or agree on a released value of the property shipped, by signing the contract and filling out the appropriate blanks.

In other words, the note, though it preceded the spaces where the signatures would ordinarily appear, was purely explanatory or suggestive, and nothing more.

The use of the permissive word "may" would seem to show that the mode indicated in the note was not the only method that might be adopted by the shipper to bind himself by a declared or released value of the goods shipped.

In fact, as we have already seen, any other construction would impose a condition or restriction not required by the statute, on which contracts of this character are based.

While in view of the provisions of paragraph 2 the suggested acts in the note were not necessary to bind the shipper as was said in *Amer. Ry. Exp. Co. v. Lindenburg*, 260 *U. S.* 584, *supra*, they would bring into existence additional evidence of an agreed value.

Further than that, the act of 1916 was an amendment to the Interstate Commerce Act, which was enacted for the purpose of equalizing and preventing any improper discrimination in rates.

Under that act, it was the duty of the Interstate Commerce Commission to prescribe uniform classified express rates, based on shipments having a declared or released value of not exceeding $50, or not exceeding 50 cents per pound, actual weight, on shipments weighing more than 100 pounds. It was also the duty of the Commission to prescribe classified rates on shipments having a declared value in excess of those figures; and it not only appeared that rates based on such values had been filed with the Commission, and approved by it, but the receipt produced ·by the shipper expressly provided that the shipment in this case was received "subject to the classifications and tariffs in effect on the date" thereof. Such classifications and tariffs, therefore, composed a part of such contract. See *C., N. O. & T. P. R. Co. v. Rankin,* 241 *U. S.* 319, 36 *S. Ct.* 555, 60 *L. Ed.* 1022, *L. R. A.* 1917A, 265.

But, independent of any such provision, the contract between the shipper and the carrier is necessarily based on the schedules and rates prescribed by the Commission, and even though it was intended by the. contract, any variation therefrom would be unlawful. *Chicago & Alton R. R. Co. v. Kirby,* 225 *U. S.* 155, 32 *S. Ct.* 648, 56 *L. Ed.* 1033, *Ann. Cas.* 1914A, 501; *Kansas City Southern Ry. Co. v. Carl,* 227 *U. S.* 639, 653, 33 *S. Ct.* 176, 57 *L. Ed.* 683; *Illinois Central R. R. Co. v. Henderson Elevator Co.,* 226 *U. S.* 441, 33 *S. Ct.* 176, 57 *L. Ed.* 290; *Louisville & Nashville R. R. Co. v. Maxwell,* 237 *U. S.* 94, 35 *S. Ct.* 494, 59 *L. Ed.* 853, *L. R. A.* 1915E, 665; *Amer. Exp. Co. v. U. S. Horseshoe Co.,* 244 *U. S.* 58, 37 *S. Ct.* 595, 61 *L. Ed.* 990; *Southern Exp. Co. v. Byers,* 240 *U. S.* 612, 36 *S. Ct.* 410, 60 *L. Ed.* 825, *L. R. A.* 1917A, 197; *A., etc., Ry. Co. v. Robinson,* 233 *U. S.* 173, 34 *S. Ct.* 556, 58 *L. Ed.* 901; *Boston & Maine R. R. Co. v. Hooker,* 233 *U. S.* 97, 34 *S. Ct.* 526, 58 *L. Ed.* 868, *L. R. A.* 1915B, 450, *Ann. Cas.* 1915D, 593; *P., C., C. & St. L. Ry. Co. v. Fink,* 250 *U. S.* 577, 40 *S. Ct.* 27, 63 *L. Ed.* 1151; *Western Union Telegraph Co. v. Esteve Bros. & Co.,* 256 *U. S.* 566, 41 *S. Ct.*

584, 65 *L. Ed.* 1094; *Pelaggi & Co. v. Central Vermont Ry. Co.*, 97 *Vt.* 1, 121 *A.* 441; *Acme-Evans Co. v. B. & O. R. R. Co.*, 142 *Md.* 658, 121 *A.* 571; *Canning Co. v. Southern Pacific Co.*, 219 *Mich.* 388, 189 *N. W.* 210. See, also, *Cooney Co. v. Arlington Hotel Co.*, 11 *Del. Ch.* 137, 98 *A.* 186; *Western Union Tel. Co. v. Priester*, 48 *S. Ct.* 234, 72 *L. Ed.* 251, decided by the Supreme Court of the United States February 20, 1928.

In *Atchison, Topeka & Santa Fe Ry. Co. v. Robinson*, 233 *U. S.* 173, *supra*, which was decided prior to 1916, but where the receipt was not given until after the shipment had left the station, and the suit was, therefore, brought on the oral contract, the court said:

"To give to the oral agreement upon which the suit was brought, the prevailing effect allowed in this case by the charge in the trial court, affirmed by the judgment of the Supreme Court of the state, would be to allow a special contract to have binding force and effect though made in violation of the filed schedules which were to be equally observed by the shipper and carrier. If oral agreements of this character can be sustained then the door is open to all manner of special contracts, departing from the schedules and rates filed with the Commission."

In *P., C., C. & St. L. Ry. Co. v. Fink*, 250 *U. S.* 577, *supra*, the court, among other things, said:

"However this may be, in our view the question must be decided upon consideration of the applicable provisions of the statutes of the United States regulating interstate commerce. The purpose of the act to regulate interstate commerce, frequently declared in the decisions of this court, was to provide one rate for all shipments of like character, and to make the only legal charge for the transportation of goods in interstate commerce the rate duly filed with the Commission. In this way discrimination is avoided, and all receive like treatment, which it is the main purpose of the act to secure."

In *Western Union Tel. Co. v. Esteve Bros. & Co.*, 256 *U. S.* 566, *supra*, the court also said:

"The lawful rate having been established, the company was by the provisions of *section 3 of the Act to Regulate Commerce* [49 *U. S. C. A.* § 3 ; *Comp. St.* § 8565] prohibited from granting to any one an undue preference or advantage over the public generally. * * * If the general public, upon paying the rate for an unrepeated message, accepted substantially the risk of error involved in transmitting the message, the company could not, without granting an undue preference or advantage extend different treatment to the plaintiffs here. The limitation of liability was an inherent part of the rate. The company could no more depart from it than it could depart from the amount charged for the service rendered."

At page 573 (256 *U. S.*, 41 *S. Ct.* 587), the same court also said:

"Plaintiffs insist that it is the filing and subsequent publication of the railroad rate which gives it the force of law and requires the shipper to take notice of it. But the contention, by dwelling unduly upon the precedural features of the act, would defeat the end which Congress had in view. Both railroad and telegraph cable rates are initiated by the carrier. It is true that a railroad rate does not have the force of law, unless it is filed with the Commission. But it is not true that out of the filing of the rate grows the rule of law by which the terms of this lawful rate conclude the passenger. The rule does not rest upon the fiction of constructive notice. It flows from the requirement of equality and uniformity of rates laid down in *section* 3 of the *Act to Regulate Commerce*. Since any deviation from the lawful rate would involve either an undue preference or an unjust discrimination, a rate lawfully established must apply equally to all, whether there is knowledge of it or not. Congress apparently concluded, in the light of discrimination theretofore practiced by railroads among shippers and localities, that in transportation by rail equality could be secured only by provisions involving the utmost definiteness and constant official supervision.

"Accordingly by *section* 6 [49 *U. S. C. A.* § 6; *Comp. St.* § 8569] it forbade a carrier of goods from engaging in transportation unless its rates had been filed with the Commission, and it prohibited, under heavy penalties, departure in any way from the terms of those rates when filed."

In this case, it also appears that the plaintiff's agent (Mrs. Windsor) knew that there were classified rates based upon value, and intended to ship at the lower rate.

To permit a recovery on any other basis would constitute an undue preference and defeat the very purpose of the Interstate Commerce Act.

Our conclusion, therefore, is that the plaintiff can only recover at the rate of 50 cents per pound on an actual weight of 170 pounds, plus interest from September 8, 1925.